552 F.2d 886
 Janet M. d'HEDOUVILLE, Plaintiff-Appellant,
v.
PIONEER HOTEL COMPANY and Pioneer Hotel Properties, Defendants,
Monsanto Company, Defendant-Appellee.
Janet M. d'HEDOUVILLE, Plaintiff-Appellee,
v.
PIONEER HOTEL COMPANY and Pioneer Hotel Properties, Defendants,
Monsanto Company, Defendant-Cross-Appellant.
Janet M. d'HEDOUVILLE, Plaintiff,
v.
PIONEER HOTEL COMPANY and Pioneer Hotel Properties,
Defendants-Appellees,
Monsanto Company, Defendant-Appellant.
Janet M. d'HEDOUVILLE, Plaintiff,
v.
PIONEER HOTEL COMPANY and Pioneer Hotel Properties,
Defendants-Appellants,
Monsanto Company, Defendant-Appellee.
 Nos. 75-1576, 75-1755, 75-2117 and 75-2426.
 United States Court of Appeals,
Ninth Circuit.
 April 26, 1977.
 
 John F. Molloy, argued, Robertson, Molloy, Fickett & Jones, Tucson, Ariz., Elias M. Romley, argued, Moore & Romley, Phoenix, Ariz., for appellants.
 John H. Westover, argued, O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Phoenix, Ariz., for appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before BROWNING and SNEED, Circuit Judges, and WILLIAMS,* District Judge.
 OPINION
 BROWNING, Circuit Judge:
 
 
 1
 Fire broke out on the fourth floor of the Pioneer Hotel in Tucson, Arizona, shortly after midnight on December 20, 1970. It spread rapidly through the upper floors. Twenty-eight people were killed, and the hotel was severely damaged.
 
 
 2
 Paul d'Hedouville was one of the victims. His widow, Janet M. d'Hedouville, brought this wrongful death diversity action against the Pioneer Hotel, Monsanto Company, and others. Pioneer cross-claimed against Monsanto.
 
 
 3
 Mrs. d'Hedouville settled with all defendants except Monsanto.[1] Her claim and Pioneer's cross-claim, both against Monsanto, were submitted to the jury, which returned verdicts against Monsanto. Monsanto appeals on the grounds that the verdicts were not justified by the evidence and that error occurred at trial. Mrs. d'Hedouville and Pioneer appeal on the ground that the verdicts were inadequate.
 
 
 4
 * Monsanto manufactured an acrylic fiber known as Type 26 and sold this fiber to Callaway Mills, which made it into carpeting. Carpeting of this type was installed in the Pioneer Hotel. Evidence was offered that Type 26 fiber ignites readily and does not self-extinguish, and that these characteristics contributed to the outbreak and rapid spread of the fire. Mrs. d'Hedouville and Pioneer contended that Type 26 fiber was unreasonably dangerous, and Monsanto therefore was strictly liable in tort under the principle of Restatement of Torts 2d § 402A.[2]
 
 
 5
 Monsanto's arguments concerning the application of the doctrine of strict products liability to this case are considered below under three headings reflecting the basic propositions on which Monsanto's defense rests: (1) that Type 26 fiber was not dangerous for its intended use, (2) that Callaway Mills was aware of the flammability characteristics of Type 26 fiber, and (3) that Pioneer's negligence and an unknown person's act of arson were superseding causes of the deaths and property damage.
 
 
 6
 1. Monsanto argues the trial court erred in several respects in refusing to submit to the jury Monsanto's theory that Monsanto was not liable because Type 26 fiber was not dangerous for its intended use.
 
 
 7
 Monsanto asserts the trial court's instructions permitted the jury to hold Monsanto liable simply because the carpeting burned, and the trial court erred in refusing an instruction that a product was dangerously flammable only if its burning rate was such as to make the product dangerous for its intended use.[3] Monsanto's criticism of the instructions given by the court is not justified.[4] Moreover, Monsanto did not properly object to the court's failure to give the additional instruction for which it now argues.[5] In any event, the proposed instruction was unduly restrictive in several respects. It is not true, for example, that whether a product is unreasonably dangerous is to be determined by its "intended" use. The question is not whether Monsanto "intended" the use, but whether the use was reasonably foreseeable. See R. Hursh & H. Bailey, 1 American Law of Products Liability, § 4:40 at 758 (2d ed. 1974).
 
 
 8
 Monsanto also objects to several evidentiary rulings related to whether the fiber was unreasonably dangerous. It asserts the trial court erred in admitting evidence relating to flammability tests Monsanto conducted on carpeting made from Type 26 fiber, contending the carpeting used in these tests was not comparable to the Callaway Mills carpeting involved in the fire. The trial court exercises a wide discretion in determining whether the probative value of evidence of tests and experiments exceeds the danger that such evidence may mislead the jury. McCormick, Law of Evidence, § 202 at 485-86 (2d ed. 1972). Although there were differences between the conditions involved in Monsanto's tests and the circumstances involved in the fire, these differences were not so great as to require exclusion of the test evidence as a matter of law. We also reject Monsanto's argument that the lack of precise criteria for determining whether the carpeting "passed" the test precluded admission of evidence of the results.
 
 
 9
 Monsanto argues the court erred in excluding evidence relating to flammability tests on other fibers. Evidence of the flammability of other fibers was marginally relevant, and the court admitted a good deal of evidence on this subject. Some limitation on the amount of such evidence received was permissible. We are not prepared to say the court committed error, particularly reversible error, in drawing the line where it did.
 
 
 10
 Monsanto contends it was error to admit government regulations regarding flammability of fabrics that became effective after the sale of the fiber and occurrence of the fire involved in this case. Proof of a regulatory code adopted after a defendant has acted, Monsanto asserts, is not relevant "to show that defendants' violation of its standards constitutes negligence." The rule is correctly quoted. See George v. Fox West Coast Theatres, 21 Ariz.App. 332, 337, 519 P.2d 185, 190 (1974). It is inapplicable to this case, however. The claim against Monsanto was based on strict liability, not on negligence alone, and under this theory Monsanto's due care was not in issue. Cf. Ault v. International Harvester Co., 13 Cal.3d 113, 118, 117 Cal.Rptr. 812, 814, 528 P.2d 1148, 1150 (1974).
 
 
 11
 2. One of Monsanto's most strongly pressed defenses to strict products liability was that Callaway Mills was aware of the flammability characteristics of the fiber. Several of Monsanto's contentions on appeal relate to this defense.
 
 
 12
 Restatement of Torts 2d § 402A imposes strict liability upon one who sells a product that is defective and unreasonably dangerous. Comment i states that a product is "unreasonably dangerous" if it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."
 
 
 13
 Pointing to the trial court's instructions (see note 4 supra ), Monsanto argues the court led the jury to believe the question was whether Type 26 fiber had a propensity for causing harm beyond that contemplated by Paul d'Hedouville and Pioneer. The controlling question, Monsanto asserts, was whether Callaway Mills was aware of the flammability characteristics of the fiber. Monsanto contends the evidence showed Callaway Mills had such knowledge. It follows, Monsanto concludes, that Type 26 fiber cannot be considered "unreasonably dangerous" and hence defective, and Monsanto's motion for directed verdict should have been granted.[6]
 
 
 14
 Monsanto reaches the same destination by a second route, contending the real question is whether Monsanto breached a duty to warn, that this question is to be answered in accordance with the negligence rule of section 388 of the Restatement[7] rather than the strict liability rule of section 402A, and that under subsection (b) of section 388 the need to warn is to be determined by the knowledge possessed by the purchaser, Callaway Mills, and not by what may or may not have been known to subsequent users, such as Pioneer and Paul d'Hedouville.
 
 
 15
 Neither argument is sound.
 
 
 16
 Whether a product is "unreasonably dangerous" within the meaning of section 402A and therefore defective for the purpose of strict liability, is not determined by the subjective knowledge of the injured person or of any other particular individual or entity. The knowledge of Pioneer and Paul d'Hedouville would be relevant in determining whether they assumed the risk of injury from the unreasonably dangerous condition. But neither their subjective appreciation of the danger nor the subjective appreciation of Callaway Mills was relevant in determining whether carpet made from Type 26 fiber was defective because more dangerous than contemplated by the ordinary consumer of the product. Maas v. Dreher, 10 Ariz.App. 520, 523, 460 P.2d 191, 193-94 (1969). See also Jackson v. Coast Paint & Lacquer Co., 499 F.2d 809, 812, 814-15 (9th Cir. 1974). This determination was to be made by reference to a generalized and objective standard, i. e., "the ordinary knowledge common to the community." Restatement of Torts 2d § 402A, comment i.[8] That is what the jury was told. See note 4 supra.
 
 
 17
 The question remains whether the "community" whose knowledge is controlling consists of those who purchase fiber to make carpeting, or those who purchase the carpeting for use, or use it. Monsanto insists it is the former, since comment i states that the article "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it" (emphasis added) and the fiber itself is purchased only by the manufacturer of carpeting.
 
 
 18
 Noting that the seller's duty under section 402A is to "the ultimate user or consumer," we held in Jackson v. Coast Paint & Lacquer Co., supra, 499 F.2d at 812, that this group of persons also constitutes "the 'community' whose common knowledge the jury is to ascertain," and that the danger involved in using paint therefore was to be determined by the understanding common to painters who applied it and not painting contractors who purchased it.[9] Monsanto has conceded that Pioneer and Paul d'Hedouville are entitled to the benefit of section 402A. See note 6 supra. Since the section applies only to "ultimate user(s) or consumer(s)," this is a concession that persons who purchase and install carpet and those who use the premises fall in this class.[10] It follows from the decision in Jackson that the danger contemplated by one possessed of the "ordinary knowledge common to the community" composed of such persons determines whether the carpet was unreasonably dangerous. On the record in this case reasonable minds could differ as to whether one possessing such ordinary knowledge would contemplate the extent of the danger from fire involved in the use of carpeting made from Type 26 fiber. The court therefore did not err in submitting the issue to the jury, nor in the form of its instruction.
 
 
 19
 Monsanto cannot avoid this result by a theory of defense drawn from Restatement § 388. This section and section 402A describe alternate theories of recovery. Section 402A states a doctrine imposing liability without fault upon the seller of a defective and unreasonably dangerous product. Section 388 states a rule imposing liability upon a supplier for negligent failure to warn of the dangerous conditions of a chattel. It is not the purpose of section 388 to state defenses to liability under section 402A.
 
 
 20
 It is true that to prevent a product from being unreasonably dangerous the seller may be required to give warnings or directions as to its use, and that a product bearing a proper warning is not in defective condition, nor unreasonably dangerous. See Restatement of Torts 2d § 402A, comment j. Such a rule, however, is applicable only if the product is "safe for use if (the warning) is followed." Id. Under these principles Monsanto's duty to warn may be relevant in cases where the product can be used safely with appropriate instructions. But this is not such a case. Monsanto sold Type 26 fiber to Callaway Mills for the explicit purpose of manufacturing carpeting. Under the instructions, the jury necessarily found Type 26 fiber was defective because of its flammability characteristics, and the carpeting was defective because of this defect in the fiber.[11] The inherent characteristics of the fiber its tendency to ignite easily and extinguish slowly made it unreasonably dangerous for carpeting, not the absence of a warning. No warning would have altered the flammability characteristics of the fiber or permitted it to be used for the purposes for which Monsanto sold it to Callaway Mills without unreasonable danger to the persons and property of ultimate consumers and users of the carpeting.
 
 
 21
 Since liability was not imposed for failure to warn, neither comment j of section 402A nor subsection (b) of section 388 is applicable. Where, as here, the claim of liability rests upon the sale of a product unreasonably dangerous to the ultimate user or consumer because of its inherent unsuitability for the reasonably foreseeable use, the seller is not immunized from liability to the user or consumer because an intermediate link in the chain of distribution was aware of the risk. Such knowledge is a defense only when failure to warn is properly the basis for the claim. All of the cases relied upon by Monsanto are of this kind[12] Monsanto could not sell Type 26 fiber to Callaway Mills to incorporate in carpeting and cut off liability to consumers and users of the carpeting by warning Callaway Mills that the fiber could not be safely used for the very purpose for which Monsanto sold it to Callaway.
 
 
 22
 3. We turn to the group of contentions relating to Monsanto's defense that Pioneer's negligence and an unknown person's act of arson were superseding causes of the deaths and property damage. As summarized by Monsanto, the contentions are that the trial court erred "in (1) failing to direct a verdict, (2) exclusion of evidence of intervening negligence, or (3) failing to instruct as to how crimes or subsequent negligence can constitute superseding cause."
 
 
 23
 Under Arizona law as developed in negligence cases, an intervening cause does not relieve an earlier actor of liability if the intervening cause was reasonably foreseeable.[13] We need not decide whether a rule less favorable to a defendant-seller may be appropriate in products liability cases,[14] for there was sufficient evidence to require submission to the jury of the question of the reasonable foreseeability of Pioneer's alleged negligence and of the possibility of arson.
 
 
 24
 Monsanto documents and testimony of its witnesses indicated that Monsanto was aware of the danger of fire, knew fires are often the result of arson, and knew that in all likelihood its carpeting would be installed in buildings without sprinkler systems, smoke sensors, or fire alarms, and in multi-story homes lacking the safety features the Pioneer Hotel also lacked.
 
 
 25
 Monsanto argues that under Arizona decisions the criminal act of a third person constitutes a superseding cause as a matter of law. While this appears to have been the rule stated in early Arizona cases,[15] more recent decisions apply the general principle of foreseeability to intervening criminal acts.[16]
 
 
 26
 Monsanto contends the trial court erroneously excluded evidence relevant to the standard of care a hotel should exercise in dealing with fire hazards. Negligence of Pioneer not amounting to assumption of risk was not a defense to the hotel's claim based on strict products liability.[17] Evidence regarding the condition of the hotel and the acts and omission of Pioneer's personnel was relevant to the defense of superseding cause, and Monsanto was permitted to introduce an abundance of such evidence and to argue it fully to the jury.
 
 
 27
 Monsanto agreed to the instruction on superseding cause given by the court, but argues that it did so only because the court refused the preferable and more extensive instructions tendered by Monsanto. The instruction given was short, but adequate. The proffered instructions were deficient in one respect or another or unnecessarily prolix, and the court properly refused them.
 
 II
 
 28
 Monsanto raises four additional issues unrelated to the application of the doctrine of products liability.
 
 
 29
 1. Monsanto argues that the evidence did not justify submission of Mrs. d'Hedouville's punitive damage claim to the jury.[18] There was evidence that Monsanto did not consider flammability testing important; that it marketed Type 26 fiber without sufficient testing; that it soon became aware that Type 26 fiber would not self-extinguish but continued to sell the fiber, even after developing Type 41 fiber, which would not propagate a flame; and that Monsanto misrepresented the safety of Type 26 fiber in advertising. Viewing the evidence in the light most favorable to the trial court's decision to submit the question of punitive damages to the jury, Southern Pacific Co. v. Barnes, 3 Ariz.App. 483, 491-92, 415 P.2d 579, 587-88 (1966), this evidence was sufficient to permit the jury to infer the "reckless indifference" to the safety of others that is prerequisite to an award of punitive damages. McNelis v. Bruce, 90 Ariz. 261, 269, 367 P.2d 625, 630 (1961), quoting Restatement of Torts § 908, comment b.
 
 
 30
 2. Monsanto argues that the trial court erred in declining to inform the jury of a settlement agreement between Mrs. d'Hedouville and Pioneer. Under the agreement Pioneer guaranteed Mrs. d'Hedouville a recovery of $500,000, and she agreed that if judgment were entered for more than that amount she would collect the entire sum from the other defendants. The agreement further provided that Mrs. d'Hedouville could convert the option into a covenant not to sue at any time and receive the $500,000 from Pioneer. She exercised the option just before submission of the case to the jury, and her claim against Pioneer was dismissed.
 
 
 31
 Agreements of this kind are permissible under Arizona law. City of Tucson v. Gallagher, 108 Ariz. 140, 493 P.2d 1197 (1972). Monsanto argues that such agreements "perpetrate a fraud upon the jury process," and urges us to hold them illegal as a matter of federal law, or require that they be disclosed to the jury.
 
 
 32
 The central problem with these agreements is said to be that they may deny non-agreeing defendants a fair trial. The interests of the agreeing defendant appear to be adverse to plaintiff but are in fact adverse to his co-defendants. The jury may be misled, and the agreeing defendant may prejudice the non-agreeing defendants during trial in many ways. See Note, The Mary Carter Agreement Solving the Problems of Collusive Settlements in Joint Tort Actions, 47 S.Cal.L.Rev. 1393, 1399-1402 (1974).
 
 
 33
 In this case, the parties and the court were advised of the agreement before trial. The trial court noted that because of Pioneer's substantial cross-claim against Monsanto, Pioneer and Monsanto, though co-defendants, were adversaries both in appearance and in fact. In denying Monsanto's request for disclosure of the agreement to the jury at the beginning of the trial, the trial court assured counsel that the court would reconsider its ruling if during trial it appeared that the jury was misled or the proceedings were not truly adversary. At the conclusion of the trial the court reaffirmed its order on the ground that Monsanto had not been prejudiced at trial by existence of the agreement or failure to disclose it to the jury. The trial court's conclusion is supported by the record. Since Monsanto was not prejudiced by the trial court's ruling, reversal for failure to disclosure the agreement's contents to the jury would not be justified.
 
 
 34
 3. Monsanto contends that the trial court erred in awarding Pioneer interest on the stipulated amount of the damage to its property from the date of the fire to the date of the stipulation. According to Monsanto, the amount of property damage was in dispute and could not be ascertained until the parties entered into a stipulation shortly before trial; therefore the property damage claim was unliquidated and unable to support an award of prejudgment interest.
 
 
 35
 The question is a close one. The Arizona Supreme Court has adopted the general rule that interest is allowed on unliquidated damages for services rendered only from the date of judgment. Schwartz v. Schwerin, 85 Ariz. 242, 250, 336 P.2d 144, 149 (1959). However, a majority of jurisdictions in this country hold that prejudgment interest is allowable on damages for the negligent injury or destruction of property. See Annotation, Interest on Amount of Damage, 36 A.L.R.2d 337, 484-86 (1974). We cannot say with any certainty that the Arizona courts would not follow the majority of jurisdictions on this point. In these circumstances we conclude that affirmance is dictated by the principle that the district court's determination of local law in a diversity case is to be accepted unless clearly wrong.[19]
 
 
 36
 Moreover, Monsanto's unwillingness to stipulate the amount of the damage until immediately prior to the trial does not establish that the damage was unliquidated in fact. Appellees cite a number of Arizona cases which, though not strong authority, suggest that Arizona courts will adopt a view favorable to recovery of interest where a loss has been sustained capable of reasonable calculation.[20] Monsanto has not sought to demonstrate that the amount of property damage could not be assessed with some degree of exactness aside from the stipulation. Accordingly, we cannot say the trial judge erred in awarding Pioneer prejudgment interest.[21]
 
 
 37
 4. Finally, Monsanto contends that because the jury's verdict in favor of Mrs. d'Hedouville ($500,000) was less than the amount she had already received in settlements ($1,200,000), and Monsanto was not required to pay anything on the judgment, Mrs. d'Hedouville was not a "prevailing party" under Federal Rule of Civil Procedure 54(d) and the court erred in awarding her costs.
 
 
 38
 A party in whose favor judgment is rendered is generally the prevailing party for purposes of Rule 54(d). C. Wright & A. Miller, Federal Practice and Procedure, § 2667 at 129 (1973); 6 Moore's Federal Practice, P 54.70(4) at 1306-07 (2d ed. 1976). The jury awarded Mrs. d'Hedouville $500,000. She is no less the prevailing party because Monsanto was entitled to a set-off against the judgment for reasons extraneous to the dispute between the two parties. The cases cited by Monsanto are not in point. They involve prior tender of the amount recovered at trial or counterclaims offsetting the verdict.
 
 III
 
 39
 Janet M. d'Hedouville's appeal raises a single issue: whether the trial court abused its discretion in denying her motion for new trial, based on the ground the verdict was grossly inadequate.
 
 
 40
 Paul d'Hedouville was 31 years old at the time of his death. He had a life expectancy of 39.8 more years. In 1970 his earnings as an attorney were $28,937. His law partner testified that decedent's earnings would have increased to $100,000 per year by 1977 or 1978, and at the rate of $10,000 to $12,000 per year thereafter. His partner testified that his own earnings were approximately $250,000 a year, and that decedent had the potential to do as well. Mrs. d'Hedouville's counsel calculated decedent's discounted future earnings at $2,449,348.
 
 
 41
 Monsanto's counsel argued that these calculations assumed decedent would do as his partner had done; that sustained earnings at these spiraling levels were possible only by a concentration upon income-enhancement that is unusual among lawyers, and unlikely in decedent's case because of his dedication to family life; and that a more realistic estimate of the financial loss to the widow and children would be reflected by the present value of decedent's income during the last year of his life extended over 30 years, which counsel calculated at $372,000.
 
 
 42
 The jury awarded Mrs. d'Hedouville $500,000. We think the award was within the range permitted by the evidence, though certainly in its lower reaches. We are unable to say the trial judge abused his discretion in so deciding.
 
 
 43
 Mrs. d'Hedouville argues that the testimony of decedent's partner was uncontradicted and therefore bound the jury, citing Quock Ting v. United States, 140 U.S. 417, 420, 11 S.Ct. 733, 35 L.Ed. 501 (1891), and Grace Brothers v. Commissioner of Internal Revenue, 173 F.2d 170, 174 (9th Cir. 1949). The doctrine is applicable to "positive testimony as to a particular fact." 140 U.S. at 420, 11 S.Ct. at 734. The only facts decedent's partner could testify to were the past and present earnings of decedent and others of the firm. The witness's testimony as to decedent's future earnings was opinion, not fact. See generally McCormick, Law of Damages, § 86 at 309 (1935). The argument of Monsanto's counsel emphasized the speculative nature of this opinion, and challenged its accuracy on the basis of considerations fairly suggested by Mrs. d'Hedouville's testimony and by facts drawn from common experience.
 
 
 44
 Mrs. d'Hedouville objects to a comment by Monsanto's counsel that may have suggested to the jury that it was to decide only how much Monsanto should be required to contribute, and that Mrs. d'Hedouville and her children might also recover from others. The comment was both inaccurate and prejudicial. However, the court instructed the jury not to concern itself with what might be recovered from others, and that the court would deduct any such recovery from an award against Monsanto. There was no abuse of discretion in the trial court's implicit determination that the instruction cured the error.
 
 IV
 
 45
 Pioneer's appeal also raises the issue of alleged abuse of discretion in denial of a motion for new trial.
 
 
 46
 Pioneer sought to recover for physical damage to the hotel and loss of future profits. As we have noted, the parties stipulated to the amount that would compensate Pioneer for the physical damage to the hotel. The jury awarded Pioneer this amount plus one dollar. Pioneer asked for a new trial limited to the issue of damage for loss of future profits.
 
 
 47
 Both parties accept Judge Traynor's opinion in Hamasaki v. Flotho, 39 Cal.2d 602, 248 P.2d 910 (1952) (cited with approval in Grimm v. California Spray-Chemical Corp., 264 F.2d 145, 146 (9th Cir. 1959)) as an accurate statement of the controlling law. Hamasaki stated the applicable doctrine as follows:
 
 
 48
 Although the granting of a new trial limited to the issue of damages rests primarily in the discretion of the trial court, it is an abuse of discretion to grant such a new trial if the question of liability is close, if the damages awarded are grossly inadequate, and if there are other circumstances that indicate that the verdict was the result of prejudice or an improper compromise.
 
 
 49
 39 Cal.2d at 604-05, 248 P.2d at 911. Justice Traynor also said, "As a general rule, it is only when the verdict allows a substantial, even though inadequate amount for general damages that it can reasonably be concluded that the jury's error related solely to the damages issue." Id. at 607, 248 P.2d at 912-13.
 
 
 50
 Applying these principles, we agree with Monsanto that the trial court did not abuse its discretion in denying Pioneer's motion for a new trial limited to non-physical damages. Monsanto's liability was strongly contested throughout a lengthy trial, and evidence of inadequacies in the maintenance and structure of the Pioneer Hotel and in the conduct of its employees provided substantial ground for a defense based on a superseding cause. The one dollar award was of course grossly inadequate. Other circumstances suggest a compromise verdict. The issue of liability had to be resolved in favor of Pioneer if Mrs. d'Hedouville was to recover against Monsanto. The jurors may have desired not to "reward" Pioneer, which may have seemed equally culpable with Monsanto. The verdict indicates the jury applied its own form of comparative negligence.
 
 
 51
 We have considered the other contentions raised by Pioneer and find them without merit.
 
 
 52
 The judgments are affirmed.
 
 
 
 *
 Honorable David W. Williams, United States District Judge, Central District of California, sitting by designation
 
 
 [1]
 One of Monsanto's assertions of error relates to the form of the settlement with Pioneer. See Part II infra
 
 
 [2]
 The section reads:
 § 402A Special Liability of Seller of Products for Physical Harm to User or Consumer
 (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
 (a) the seller is engaged in the business of selling such a product, and
 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 (2) The rule stated in Subsection (1) applies although
 (a) the seller has exercised all possible care in the preparation and sale of his product, and
 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
 The Supreme Court of Arizona has adopted the doctrine of strict liability as formulated in § 402A. See O. S. Stapley Co. v. Miller, 103 Ariz. 556, 559-60, 447 P.2d 248, 251-52 (1968).
 
 
 [3]
 The proposed instruction read:
 In determining whether the product in question was dangerously flammable, you should decide whether the rate of burning of such product was such as to be suitable for the use for which such product was intended. You will find such product to be dangerously flammable only if you determine that its burning rate and burning characteristics were such as to make it dangerous for its intended use.
 
 
 [4]
 The jury was told:
 A party who manufactures, distributes or sells a product in a defective condition, unreasonably dangerous to the user or consumer, is liable if the defective condition causes an injury and if the defect causes the product to be unsafe for a reasonably foreseeable use.
 The rule of strict liability applies only where the product is defective at the time it leaves the seller's hands.
 A product is defective when it is in a condition not contemplated by the ultimate consumer and is unreasonably dangerous. It is unreasonably dangerous when it has a propensity for causing physical harm, beyond that which would be contemplated by the ordinary user or consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.
 I instruct you that in this case both Paul d'Hedouville and the Pioneer Hotel were consumers within the meaning of the law of strict liability in tort.
 The claimed defect must exist at the time of the sale of the product. Therefore, when applying the ordinary consumer tests upon which I have previously instructed you, the test must be applied at the time of the sale of the product.
 
 
 [5]
 The court refused the instruction only for the moment, and asked Monsanto's counsel to read the case he had cited in submitting the instruction and then point out to the court how it supported the instruction. Counsel failed to do so
 
 
 [6]
 Monsanto concedes that Paul d'Hedouville and Pioneer were "user(s) or consumer(s)" within the meaning of § 402A, and therefore entitled to the benefit of the doctrine of strict products liability. Monsanto's contention is that whether the product was "unreasonably dangerous" and hence defective within the meaning of the rule is to be determined by Callaway Mills' understanding of the risks, and not by the understanding of Paul d'Hedouville or Pioneer
 
 
 [7]
 Restatement of Torts 2d § 388 reads:
 Chattel Known to be Dangerous for Intended Use
 One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
 (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
 (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
 (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.
 
 
 [8]
 Nonetheless, Monsanto was allowed to argue to the jury that Callaway Mills' knowledge was determinative. This ruling of the trial court was more favorable than Monsanto was entitled to
 
 
 [9]
 We are cited no Arizona authority to the contrary
 
 
 [10]
 It is true that Arizona has extended the protection of § 402A to "bystanders." Caruth v. Mariani, 11 Ariz.App. 188, 190, 463 P.2d 83, 85 (1970). Even if Paul d'Hedouville was in this category, Pioneer Hotel was not, and there was no evidence that those who purchased and installed carpeting had any greater or different knowledge of its flammability than those who only walked on it
 
 
 [11]
 The instruction read:
 . . . you cannot find against Monsanto Company upon the issue of strict liability unless you find both, first that the fiber sold by Monsanto to Callaway Mills was defective at the time it was sold, and, second, that the carpet was defective at the time it was sold to Pioneer Hotel, due to a defect in the fiber sold by Monsanto.
 
 
 [12]
 Jacobson v. Colorado Fuel & Iron Corp., 409 F.2d 1263 (9th Cir. 1969); Reeves v. Power Tools, Inc., 474 F.2d 375 (6th Cir. 1973); Marker v. Universal Oil Products Co., 250 F.2d 603 (10th Cir. 1957); Younger v. Dow Corning Corp., 202 Kan. 674, 451 P.2d 177 (1969); Hill v. Wilmington Chem. Corp., 279 Minn. 336, 156 N.W.2d 898 (Minn.1968). In each of the cases except Jacobson the claim with which the court dealt was based on negligence, not strict liability
 
 
 [13]
 E. L. Jones Constr. Co. v. Noland, 105 Ariz. 446, 453, 466 P.2d 740, 747 (1970); MacNeil v. Perkins, 84 Ariz. 74, 83, 324 P.2d 211, 217 (1958); Herzberg v. White, 49 Ariz. 313, 321, 66 P.2d 253, 257 (1937); O'Rielly Motor Co. v. Rich, 3 Ariz.App. 21, 25, 411 P.2d 194, 198 (1966); Salinas v. Kahn, 2 Ariz.App. 181, 189-90, 407 P.2d 120, 128-29 (1965); City of Phoenix v. Schroeder, 1 Ariz.App. 510, 516-17, 405 P.2d 301, 307-08 (1965)
 
 
 [14]
 See Eshbach v. W. T. Grant's & Co., 481 F.2d 940, 943 (3d Cir. 1973); Bradford v. Bendix-Westinghouse Auto. Air Brake Co., 517 P.2d 406, 413 (Colo.App.1973). Cf. Hales v. Green Colonial, Inc., 490 F.2d 1015, 1020-21 (8th Cir. 1974)
 
 
 [15]
 Crandall v. Consolidated Tel., Tel. & Elec. Co., 14 Ariz. 322, 328, 127 P. 994, 997 (1912); Salt River Valley Water Users' Ass'n v. Cornum, 49 Ariz. 1, 15-16, 63 P.2d 639, 646 (1937)
 
 
 [16]
 Nichols v. City of Phoenix, 68 Ariz. 124, 137-38, 202 P.2d 201, 209-10 (1949); Campbell v. City of Tucson, 4 Ariz.App. 155, 157-58, 418 P.2d 401, 403-04 (1966)
 
 
 [17]
 O. S. Stapley Co. v. Miller, 103 Ariz. 556, 561, 447 P.2d 248, 253 (1968); Mather v. Caterpillar Tractor Corp., 23 Ariz.App. 409, 411, 533 P.2d 717, 719 (1975); McCarty v. F. C. Kingston Co., 22 Ariz.App. 17, 18, 522 P.2d 778, 779 (1974)
 
 
 [18]
 The jury did not award punitive damages. Monsanto complains that it was prejudiced nonetheless because the trial court admitted evidence of Monsanto's net income and net worth as relevant to this issue
 
 
 [19]
 See Smith v. Sturm, Ruger & Co., 524 F.2d 776, 778 (9th Cir. 1975); Robinson v. United States, 518 F.2d 1105, 1109 (9th Cir. 1975); Douglas v. Beneficial Finance Co., 469 F.2d 453, 455 (9th Cir. 1972); Turnbull v. Bonkowski, 419 F.2d 104, 106 (9th Cir. 1969). See also United States v. Valley National Bank, 524 F.2d 199, 201 (9th Cir. 1975); Santisteven v. Dow Chem. Co., 506 F.2d 1216, 1220 (9th Cir. 1974); Kovacs v. Sun Valley Co., 499 F.2d 1105, 1106 (9th Cir. 1974); Klingebiel v. Lockheed Aircraft Corp., 494 F.2d 345, 347 (9th Cir. 1974)
 
 
 [20]
 See, e. g. Homes & Son Constr. Co. v. Bolo Corp., 22 Ariz.App. 303, 306, 526 P.2d 1258, 1262 (1974); Arizona Title Ins. & Trust Co. v. O'Malley Lumber Co., 14 Ariz.App. 486, 496-97, 484 P.2d 639, 649-50 (1971); State ex rel. Herman v. Mestas, 12 Ariz.App. 289, 297, 469 P.2d 855, 863 (1970)
 
 
 [21]
 Pointing out that Pioneer sought from the jury unliquidated damages for loss of income, business reputation, and good will, Monsanto argues that this unliquidated portion of its damages "could not be split" from the stipulated portion for purposes of allowing prejudgment interest. However, we see no reason why the property damage claim is inseparable. The fact that Monsanto was willing to stipulate as to the property damage portion indicates that claim was severable
 Monsanto also notes that Pioneer sought to recover not only for property damage but for loss of income and use of the property, and cites cases holding that recovery for loss of use of the property takes the place of interest. See American Castype Corporation v. Niles-Bement-Pond Co., 177 Misc. 13, 29 N.Y.S.2d 888, 889 (Sup.Ct.1941), rev'd on other grounds, 266 App.Div. 557, 42 N.Y.S.2d 638 (App.Div.1943); Schulte v. Louisville & N. R. Co., 128 Ky. 627, 108 S.W. 941, 944 (1908). However, in this case an award for the deprivation of use would not take the place of interest and thus the cases are inapplicable.