No. 45,256

Vern Younger, *Appellant,* v. Dow Corning Corporation and Enmar, Inc., *Appellees.*

(451 P. 2d 177)

Opinion filed March 8, 1969.

*Payne H. Ratner, Jr.,* of Wichita, argued the cause, and *Payne H. Ratner, Louise Mattox, Cliff W. Ratner, R. R. Barnes, Jim Lawing* and *Edmond L. Kinch,* all of Wichita, were with him on the brief for the appellant.

*H. E. Jones,* of Wichita, argued the cause, and *A. W. Hershberger, Richard Jones, Jerome E. Jones, Robert J. Roth, William R. Smith, Robert J. O'Connor* and *Greer Gsell,* all of Wichita, were with him on the brief for the appellee, Dow Corning Corporation.

*Richard C. Hite,* of Wichita, argued the cause, and *W. A. Kahrs, Robert H. Nelson, H. W. Fanning, Darrell D. Kellogg, Roger Sherwood* and *Richard L. Honeyman,* all of Wichita, were with him on the brief for the appellee, Enmar, Inc.

The opinion of the court was delivered by

Schroeder, J.: The issue presented by this appeal is whether the manufacturer of a product which is potentially hazardous to health and who gives adequate warning of such potential hazard, by label or otherwise, to its immediate vendee, an industrial user, may be liable in tort to an employee of the vendee for injuries allegedly sustained from such product upon the theory that the manufacturer was negligent in failing to give additional and specific warnings of the product's potential health hazard to the employee.

The plaintiff in his amended petition alleged that he was employed by the Beech Aircraft Corporation in its jig shop as a jig builder. In the course of his employment he was ordered to spray a compound known as "Dow Corning R-671 Resin" onto jig parts for the purpose of preventing adhesion of organic materials to jig

patterns. In a similar manner the plaintiff used a chemical compound known as "Toluol." The plaintiff claimed that such chemical compounds contained irritants which were dangerous and deleterious to the health of the users thereof, all of which was known to the defendants but unknown to the plaintiff.

The case was submitted to the trial court on the defendants' motion for summary judgment upon the basis of stipulations and admissions of fact contained in the amended pretrial order as follows:

"1. The parties agreed to be bound by the following stipulations and admissions of fact:

"*a*. The court has jurisdiction of the parties and the subject matter.

"*b*. At all times material the plaintiff was an employee of Beech Aircraft Corporation.

"*c*. The plaintiff's work environment at Beech Aircraft Corporation plant was subject to the exclusive control of Beech Aircraft Corporation.

"*d*. At all times herein material defendant Dow Corning Corporation has been a manufacturer of a product known as Dow Corning R-671 resin and has supplied Beech Aircraft Corporation with that product.

"*e*. At all times herein material defendant Enmar, Inc., has been a supplier of a product known as Toluene (or Toluol) to Beech Aircraft Corporation.

"*f*. The plaintiff does not claim that the product known as Dow Corning R-671 resin, which was manufactured by defendant Dow Corning Corporation or the product known as Toluene distributed by defendant Enmar, Inc., were either negligently manufactured or defective in nature.

"*g*. Defendant Dow Corning Corporation admits that its product, Dow Corning R-671 resin, is potentially hazardous to the health of persons using it in industrial processes if it is used without adequate ventilation and if its vapors are inhaled for long periods of time.

"*h*. Defendant Enmar, Inc., admits that its product, Toluene, is potentially hazardous to the health of persons using it in industrial processes if it is used without adequate ventilation and if its vapors are inhaled for long periods of time.

"*i*. During the period September, 1962, to June, 1964, the plaintiff was exposed to the vapors of Toluene and Dow Corning R-671 while working for the Beech Aircraft Corporation.

"*j*. At all times herein material Beech Aircraft Corporation was aware of the potential health hazards presented by Toluene and Dow Corning R-671 resin when ordering said products from the defendants.

"*k*. At all times herein material Beech Aircraft Corporation had adequate warning from the labels on the product of Dow Corning of, or through the exercise of reasonable care could have discovered, the potential health hazards that might arise from using said defendant's product without adequate ventilation or from breathing the vapors of said product over prolonged periods.

"*l*. At all times herein material Beech Aircraft Corporation had adequate warning from the labels on the product of defendant Enmar, Inc., of the potential health hazards that might arise from using said product without adequate ventilation or from breathing the vapors of said product over prolonged periods.

"*m.* Plaintiff abandons his claims against the defendants based upon breach of either express or implied warranties."

The trial court ruled that the Federal Labeling of Hazardous Substances Act (15 U. S. C. A. § 1261) and Regulations promulgated to supplement and implement said act (21 C. F. R. 191.7, *et seq.*) were not applicable to this action, and this point is not before us on appeal.

Insofar as material herein the plaintiff's contention set forth in the amended pretrial order is:

"a. The defendants have violated a common law duty to warn the plaintiff of the health hazards involved in exposure to their products."

and the defendants' contention, insofar as material herein, set forth in the amended pretrial order is:

"a. By giving Beech Aircraft Corporation adequate warning of the potential health hazards of their products defendants have fully discharged any duties that they may have had."

The trial court, after having listened to arguments of counsel, considered the stipulations and admissions of fact and the authorities cited by the parties, sustained the defendants' motion for summary judgment "for the reason that the defendants, having given adequate warning to their immediate vendees of the potential health hazards presented by their products, had no duty to further warn the plaintiff."

The issue presented on appeal, as heretofore stated, is an extremely narrow one.

We have been cited to no Kansas decisions, nor has our research disclosed any, involving the issue herein upon facts substantially identical.

A case from which some parallel might be drawn is *Bergstresser v. Van Hoy,* 142 Kan. 88, 45 P. 2d 855. There the defendant sold a used automobile to a third party. The automobile had defective brakes. The plaintiff, a pedestrian, was injured by the operation of the vehicle because of the defective brakes, and the court held the used car dealer who sold the automobile had a duty to inform the buyer of the defective condition of the automobile, and that the discharge of that duty relieved the seller of liability to the buyer, and to persons who may be injured through the operation of the automobile by the buyer.

The appellant relies on *Steele v. Rapp,* 183 Kan. 371, 327 P. 2d 1053. There the defendant allegedly sold a volatile fingernail polish remover to the plaintiff's employer. The plaintiff alleged she was

injured when a co-employee dropped a glass container of the polish remover and it ignited and exploded. The lower court sustained a demurrer to the plaintiff's pleadings on the ground that the dropping of the fingernail polish remover by the plaintiff's co-employee constituted an act of negligence which was an intervening and efficient cause of the plaintiff's alleged injuries. This court reversed and remanded the case for further proceedings, holding that:

". . . the unintentional dropping of the bottle of volatile fluid, even if negligent of itself, does not relieve the defendant of his initial and primary liability for his negligence in placing in commerce a highly inflammable and explosive substance *and failing to warn or advise users of the inherently dangerous character of the apparently innocuous substance* sold and delivered to the beauty shop, when the defendant knew or should have known of its dangerous characteristics and should have reasonably apprehended that it would explode and burn if not handled with great care by employees of the beauty shop." (p. 384.) (Emphasis added.)

The only reference to a duty to warn in the *Steele* case is almost collateral. The plaintiff's second amended petition charged the defendant with negligence in " 'Distributing and selling a product which was imminently and inherently dangerous, without giving notice by an appropriate label or otherwise of its dangerous quality.' " (p. 373.)

In discussing this point in the opinion the court said the demurrer concedes that the defendant did not sell the fingernail polish remover in a safe container or give notice or warning by an appropriate label or otherwise of an imminently or inherently dangerous quality of such product. In *Steele* the court was dealing with a product that was inflammable and explosive, and the remarks of the court implied that it was the duty of the supplier to disclose *by label or otherwise* the dangers inherent in the product.

In the instant case the manufacturers did give adequate warning by label or otherwise of the potential health hazards of their product to Beech Aircraft Corporation, the *industrial user*.

In *Branstetter v. Robbins*, 178 Kan. 8, 283 P. 2d 455, this court distinguished between cases involving explosive products and those involving products giving rise to lesser hazards.

The general rule in regard to a supplier's duty to warn of known dangers in the ordinary use of his products is found in Restatement, Torts (2d Ed. 1965), § 388, as follows:

"One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable

use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

"(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

"(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous." (pp. 300, 301.)

Under the Comment on Clause (c) a distinction is made regarding warnings given to third persons. It reads in part:

"Giving to the third person through whom the chattel is supplied all the information necessary to its safe use is not in all cases sufficient to relieve the supplier from liability. It is merely a means by which this information is to be conveyed to those who are to use the chattel. The question remains whether this method gives a reasonable assurance that the information will reach those whose safety depends upon their having it. All sorts of chattels may be supplied for the use of others, through all sorts of third persons and under an infinite variety of circumstances. This being true, it is obviously impossible to state in advance any set of rules which will automatically determine in all cases whether one supplying a chattel for the use of others through a third person has satisfied his duty to those who are to use the chattel by informing the third person of the dangerous character of the chattel, or of the precautions which must be exercised in using it in order to make its use safe. There are, however, certain factors which are important in determining this question. There is necessarily some chance that information given to the third person will not be communicated by him to those who are to use the chattel. This chance varies with the circumstances existing at the time the chattel is turned over to the third person, or permission is given to him to allow others to use it. These circumstances include the known or knowable character of the third person and may also include the purpose for which the chattel is given. Modern life would be intolerable unless one were permitted to rely to a certain extent on others' doing what they normally do, particulary if it is their duty to do so. If the chattel is one which if ignorantly used contains no great chance of causing anything more than some comparatively trivial harm, it is reasonable to permit the one who supplies the chattel through a third person to rely upon the fact that the third person is an ordinary normal man to whose discredit the supplier knows nothing, as a sufficient assurance that information given to him will be passed on to those who are to use the chattel.

.   .   .   .   .   .   .   .   .   .   .   .

"Here, as in every case which involves the determination of the precautions which must be taken to satisfy the requirements of reasonable care, the magnitude of the risk involved must be compared with the burden which would be imposed by requiring them (see § 291), and the magnitude of the risk is determined not only by the chance that some harm may result but also the serious or trivial character of the harm which is likely to result (see § 293). Since the care which must be taken always increases with the danger involved, it may be reasonable to require those who supply through others chattels which if ignorantly used involve grave risk of serious harm to those who use

them and those in the vicinity of their use, to take precautions to bring the information home to the users of such chattels which it would be unreasonable to demand were the chattels of a less dangerous character." (pp. 308, 309.)

Cases from other jurisdictions directly in point shed some light on the situation.

In *Bertone v. Turco Products*, 252 F. 2d 726 (3rd Cir. 1958), the plaintiff was an immigrant who had just recently come to this country, and was able to speak, understand or read very little English. He was employed by Flying Tiger Line, Inc. to clean aircraft engine parts. In the course of his employment he was given a solution called "Paint-Gon" to be used in dissolving foreign substances deposited on aircraft engine parts. "Paint-Gon" had dangerous properties and should not have been permitted to touch the person, nor should its fumes be inhaled very long. The containers in which "Paint-Gon" was made available apparently bore a warning of the danger, as did the containers in the instant case. Recommended procedure in using the product indicated that it be applied in a well-ventilated space with tools permitting the use of the substance without making direct contact with the person. The extent of the instructions Bertone received from his employer, the extent of his comprehension of whatever instructions were given, and the type of tools and working space he was assigned did not appear from the pleadings. It would appear he was injured by exposure to "Paint-Gon."

There the plaintiff filed an action against Turco Products, Inc., the manufacturer of "Paint-Gon," on the theory of negligence in failing to warn purchasers and prospective users of the dangerous characteristics of the product and the precautions required for its use. Turco answered and brought in Flying Tiger on a third party complaint, asserting a right to indemnity on the ground that Flying Tiger had not adequately instructed the plaintiff of the dangers in using "Paint-Gon" even though Flying Tiger had been apprised thereof, and consequently plaintiff's injury was a result, not of Turco's negligence but of Flying Tiger's negligence. On appeal from an order sustaining Flying Tiger's motion for summary judgment it was said:

"Bertone asserts he was not warned of the dangers of Paint-Gon. Turco states that its warning to prospective users was adequate. *If Turco's warning was adequate, there could be no recovery from Turco by Bertone irrespective of whether or not Flying Tiger may have acted negligently as to Bertone.* This would dispose of the first two possibilities of legal consequence; *Bertone could not recover from Turco for negligence by Flying Tiger in failing to pass on to*

*Bertone the manufacturer's adequate warning when Flying Tiger assigned Bertone to the task requiring the use of Paint-Gon.* It is well nigh inconceivable that Bertone, under the disability of illiteracy would have found his own way, without some explicit guidance, to the use of Paint-Gon. The supplier of the material to be used for the supplier's business purposes is under a duty to pass along the manufacturer's warning if he knew of it. Restatement, Torts, § 391. Accord, Tulpom v. Cantor, 87 N. J. L. 213, 93 A. 573 (E. & A. 1915); Ramsey v. Raritan Copper Works, 78 N. J. L. 474, 74 A. 437 (E. & A. 1909); Cf. Restatement, Torts, § 324, Comment b. In that sort of situation it is clear that only Flying Tiger would have been negligent. *Thus if Turco exercised reasonable care to inform users of Paint-Gon of that product's dangers, Bertone cannot recover from Turco; a fortiori* there would be no call for indemnity of Turco by Flying Tiger." (p. 728.) (Emphasis added.)

In *Weekes v. Michigan Chrome & Chemical Company,* 352 F. 2d 603 (6th Cir. 1965), the plaintiff contracted a serious skin condition known as "chlor-acne" as a result of working with "Miccrowax C-600" sold by the defendant. A jury awarded the plaintiff $24,000 damages in an action charging that the defendant had negligently failed to provide adequate warning of the dangers involved in using this product and to advise the plaintiff of the proper precautions to avoid them. On appeal the defendant charged the district judge erred in denying his motion for a directed verdict.

The case deals primarily with whether the defendant gave any warning of the hazards of its product, and whether such notice as was given was adequate. The defendant asserted "that it was not required to see to it that each person who might be expected to use the wax was individually and by defendant adequately warned of its dangerous propensities." (p. 607.) In response to this contention the appellate court said:

". . . We make clear that we do not hold to the contrary. To do so would visit upon a manufacturer a burden impossible to carry. See Bertone v. Turco Products, Inc., 252 F. 2d 726, 728 (CA 3, 1958); Nishida v. E. I. Du Pont De Nemours & Co., 245 F. 2d 768, 773-774 (CA 5, 1957), cert. denied, 355 U. S. 915, 78 S. Ct. 342, 2 L. Ed. 2d 275 (1958). . . ." (p. 607.)

A similar situation was presented in *Foster v. Ford Motor Company,* 139 Wash. 341, 246 Pac. 945, 48 A. L. R. 934. There the plaintiff, while driving a Ford tractor for his employer, Irwin, was injured when the tractor tipped over backward. An action was brought against Irwin and the Ford Motor Company, manufacturer of the tractor. The basis of the complaint against the Ford Motor Company was that it manufactured a tractor that was imminently dangerous to the life and limb of the operator, because the tractor was negligently constructed and designed in that approximately

one-third of the weight of the tractor was at the front and two-thirds at its rear; that the application of power when the tractor would become mired in mud was sufficient to up-end it. The facts showed that at the time Irwin purchased the tractor he was notified by the dealer that in driving it, a foot should always be kept on the clutch. The plaintiff contended the manufacturer of an article, which, through its faulty construction is imminently dangerous to human life, is responsible to any third person using it unless notice is given to the person injured. The appellate court noted that while there are cases to this effect they "do not establish the rule to be applied to the facts in this case." (p. 347.) In ruling upon this point the court said:

". . . It may be assumed, for the purposes of this case, that the tractor in question was imminently dangerous, if used in a certain way. *Olds Motor Works v. Shaffer*, 145 Ky. 616, 140 S. W. 1047, 37 L. R. A. (N. S.) 560. It could not be, under the evidence, inherently dangerous, except under the condition which we have before outlined, viz.: the blocking of the rear wheels, and the application of tremendous power. But notice of the dangerous character of the tractor under such conditions was fully set out in the Manual of Instructions. It is admitted that the method of operation was fully explained to the Irwins at the time they purchased the machine, that they read the instructions to be followed regarding its operation if it became mired, and they fully covered a situation like the one now in question. It can hardly be contended that further notice could have been given. It cannot be said that the manufacturer should follow the machine into the hands of servants or employees of purchasers of its tractors, and notify each one of them individually that, in extreme situations, it might become dangerous. While it may be assumed that tractors generally are sufficiently simple, so that one, even though devoid of natural mechanical skill, may learn to operate them in a very short time, it cannot be said as a matter of law that the manufacturer could anticipate that one would attempt to operate its product without previous knowledge, either from experience or from the instructions provided in the manual.

"This case bears no similarity to those which involve explosive or poisonous substances bearing either misleading directions or no directions whatsoever indicating the character of the article. . . ." (p. 347.)

Other cases that shed light upon the issue are *Sagler v. Kellogg S. S. Corporation*, 155 Misc. 217, 277 N.Y. S. 792 (1934); *Nishida v. E. I. Du Pont De Nemours & Company*, 245 F. 2d 768 (5th Cir. 1957); *Hopkins v. E. I. Du Pont De Nemours & Co.*, 199 F. 2d 930 (3rd Cir. 1952), second appearance 212 F. 2d 623; see, also, 76 A. L. R. 2d 2, 25; and see, *Love v. Wolf*, 226 C. A. 2d 378, 38 Cal. Rptr. 183 (1964); and *Stottlemire v. Cawood*, 213 F. Supp. 897 (D. D. C. 1963), where a manufacturer of dangerous medicines supplies a prescribing physician.

The appellant herein contends the issue of primary negligence, proximate cause, and intervening cause, as applied to this case, should be submitted to a jury under proper instructions. (Citing, *Rowell v. City of Wichita*, 162 Kan. 294, 176 P. 2d 590.) The appellant directs our attention to *Hubbard-Hall Chemical Company v. Silverman*, 340 F. 2d 402 (1st Cir. 1965). There the defendant chemical company sold bags of a preparation known as "Parathion dust" to a co-defendant who was the decedents' employer. The bag contained a label which could be construed to have adequately warned the employer of the hazards involved in using the dust. The decedents, however, were illiterate Puerto Rico laborers who failed to use adequate precautions in using the insecticide and died as a result of poisoning after the first day's work with the product. The employer contended in his defense that he personally instructed the decedents in the use of the dust. In an action brought against the manufacturer of the insecticide and the employer for the death of the two farm laborers, the court held:

"We are of opinion that the jury could reasonably have believed that defendant should have foreseen that its admittedly dangerous product would be used by, among others, persons like plaintiffs' intestates, who were farm laborers, of limited education and reading ability, and that a warning even if it were in the precise form of the label submitted to the Department of Agriculture would not, because of its lack of a skull and bones or other comparable symbols or hieroglyphics, be 'adequate instructions or warnings of its [Parathion's] dangerous condition.'" (p. 405.)

Without question the product in *Hubbard-Hall* falls in the category of a highly dangerous poison, which commands a greater duty of care on the part of the supplier than the facts herein warrant.

We hold the rule announced in *Bertone* and *Weekes* is applicable to the facts herein—the manufacturer of a product which is potentially hazardous to health and who gives adequate warning of such potential hazard, by label or otherwise, to its immediate vendee, *an industrial user*, has no additional duty to warn the vendee's employee of such hazards, and is not liable in a negligence action to such employee for failure to do so.

The court is not here confronted with a highly dangerous explosive or poisonous product. The manufacturers of the products used herein had every right to anticipate that Beech Aircraft Corporation, an industrial user to whom these products had been supplied, would pass on the warnings of the manufacturer that these products were

potentially hazardous to the health of its employees who were assigned the task of using them in their work, and that proper precautionary measures would be taken by Beech Aircraft Corporation to make the use of these products safe for its employees, all in accordance with the particular duty of Beech Aircraft Corporation to do so.

The judgment of the lower court is affirmed.