James Roy SCHLETTE, by Wanda Roe, Conservator of His Person, Plaintiff–Appellant,

v.

James BURDICK et al., Defendants–Appellees.

No. 78–1567.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 1980.

Decided Dec. 10, 1980.

James F. Kemp, Sonoma, Cal., for plaintiff–appellant.

Thomas G. Hendricks, San Rafael, Cal., argued for defendants–appellees; Douglas J. Maloney, Thomas G. Hendricks, San Rafael, Cal., on brief.

Before GOODWIN, Circuit Judge, MARKEY, Chief Judge,* and BOOCHEVER, Circuit Judge.

GOODWIN, Circuit Judge.

James Schlette, a disabled person under a state court conservatorship, appeals from the district court's summary judgment in favor of four public officers, who, as conservators, caused or permitted his involuntary confinement at Sonoma State Hospital.

Schlette originally brought this damages action under 42 U.S.C. § 1983 against twenty–six individuals employed by Marin County and Sonoma State Hospital. He sued the conservators, conservatorship investigators, public defenders, hospital officials, physicians and psychiatric technicians. He alleged, *inter alia*, that the defendants illegally had confined him in a mental institution, refused him a hearing on the legality of his confinement, failed to provide him with adequate medical and dental care, subjected him to beating and other physical abuse, withheld his mail, and restricted his visits with his father for no legitimate medical purpose.

The district court dismissed the action as to the public defenders and that order is not challenged on appeal. The action against certain state employees was settled and those defendants likewise are not before us. The question presented, therefore, is the propriety of the summary judgment in favor of Burdick, Nance, Ingham, and Usher, Marin County employees who served as his conservators and deputy conservators from December 1972 to September 1976.[1]

Schlette asserts there was a triable issue of fact as to whether his court–ordered confinement at Sonoma State Hospital from December 1975 to October 1976 was a denial of his constitutionally protected right to freedom when alternative placement with his father in a residential setting was available to him. His theory apparently is that a § 1983 damages action provides a plenary review in federal court of state court involuntary civil commitment proceedings. There may be cases in which the state court proceedings were so deficient in protecting the basic liberty of the person that an action could lie against state court conservators under § 1983, but nothing in the record in this case justifies the trial of a federal damages action against these defendants.

Schlette is a 35–year–old man who in 1954 suffered severe brain damage in an automobile accident. He has been judicially declared a "gravely disabled person," unable to provide for his food, clothing, and shelter. In 1959, upon court orders, Schlette was placed in Napa State Hospital.

The conservatorship of Schlette was established in 1973 by order of the Marin County Superior Court and was renewed by

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. The district court also denied a motion to dismiss by Burdick, Nance, Ingham and Usher on the grounds of quasijudicial immunity. The parties do not raise this issue on appeal, so we need not address the question.

that court annually through April 1977.[2] The 1973 conservatorship does not appear to have been challenged by appeal, but in 1975 and 1976, Malcolm Schlette, the father of the plaintiff, twice filed petitions objecting to renewals of the conservatorship. After hearings, these petitions were denied.

On May 17, 1976, Malcolm demanded a court trial on the issue of continuing the conservatorship. After trial, the superior court found that "no suitable alternatives to conservatorship are available," and reappointed Usher (a defendant here) as conservator. This judgment likewise does not appear to have been challenged on appeal.

On September 27, 1976, on oral motion by Malcolm, the court filed an order substituting James' sister, Wanda Roe, for Usher as conservator. Wanda Roe subsequently removed Schlette from Sonoma State Hospital and placed him with his father.

■ Summary judgment is proper if it appears that there is no genuine issue as to any material fact and that defendants are entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. *Yazzie v. Olney, Levy, Kaplan & Tenner*, 593 F.2d 100, 102 (9th Cir. 1979); Fed.R.Civ.P. 56(c).

■ In *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), the Supreme Court established that "a State cannot constitutionally confine . . . a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends" without good cause. 422 U.S. at 576, 95 S.Ct. at 2494. Under the *O'Connor* standard, Schlette's confinement would have been unconstitutional if: (1)

Schlette was nondangerous; (2) he was capable of surviving safely in freedom by himself or with the help of others; and (3) his father was a "willing and responsible" family member.

Schlette admits that he suffers from a mental disorder which makes him unable to provide for his own food, clothing, and shelter. His principal contention is that the conservators failed to investigate the possibility of removing him from the state hospital and placing him in a residential setting with his father.

The materials supporting the summary judgment motion clearly establish that the Schlette family was well known to the relevant social agencies and that specific investigation of the father's house would have been redundant.[3] The depositions of Wanda Roe and Malcolm Schlette more than amply support conclusions by the conservators that it was not in the best interests of Schlette to place him with his father. The depositions indicated that Schlette was difficult to control, violent, destructive, and a threat to the safety of others. Since his release to his father in October 1976, the depositions refer to occasions when Malcolm Schlette has been unable to control his son and consequently he and Wanda Roe have had him committed to state facilities. These references are uncontradicted. Malcolm Schlette had served a substantial prison term for arson (increased because of a parole violation) and had a history of psychiatric problems. Schlette offered no evidence to rebut defendants' showing that his father was not a "responsible" family member who was able to provide for James in safety, and that Schlette himself was a

---

2. Affidavits in support of the motion for summary judgment state that an order of the Superior Court in May 1973 authorized placement of Schlette in a state hospital. The records of that court are not in the record of this appeal, but the fact of court commitment is not contradicted.

3. Schlette contends here that defendants failed to "investigate all available alternatives to conservatorship" as required under California Welfare and Institutions Code § 5354. Unless there is a breach of constitutional rights, however, 42 U.S.C. § 1983 does not provide redress

in federal court for violations of state law. *Stiltner v. Rhay*, 322 F.2d 314, 315 (9th Cir. 1963), *cert. denied sub nom. Stiltner v. Washington*, 376 U.S. 920, 84 S.Ct. 678, 11 L.Ed.2d 615 (1964). Schlette's state law claim for failure to investigate may present a basis for collateral attack in the California courts upon his state court commitment. As set forth in the text, however, we find no triable issue of fact relating to the constitutional standards of *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975).

"dangerous" individual. On that record, the district court did not need additional investigations by the social agencies assisting the Superior Court in order to hold as a matter of law that there was no triable issue of fact, and that the defendants were entitled to summary judgment.

Affirmed.