Thomas A. BRYANT and Linda Bryant, husband and wife, Plaintiffs,

v.

TECHNICAL RESEARCH COMPANY, a foreign corporation, Defendant-Appellant.

TECHNICAL RESEARCH COMPANY, a foreign corporation, Third-Party Plaintiff,

v.

EASTMAN CHEMICAL COMPANY, a foreign corporation, Third-Party Defendant-Appellee.

EASTMAN CHEMICAL PRODUCTS, INC., Third-Party Plaintiff-Appellee,

v.

CUSTOM FURNITURE AND CABINETS, INC., an Idaho corporation, Ashland Chemical Company, a foreign corporation, and Columbia Paint Company, a foreign corporation, Third-Party Defendants-Appellees.

No. 79–4514.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 4, 1981.

Decided Aug. 31, 1981.

products liability suit arising out of an alleged failure to provide adequate warnings. Technical Research Company (TRC), the original defendant in the products liability suit, appeals the district court's dismissal of Ashland Chemical Company, Columbia Paint Company, and Custom Furniture and Cabinets, Inc., third-party defendants, and appeals summary judgment in favor of Eastman Chemical Products, Inc., another third-party defendant. Eastman also challenges the dismissal of the other third-party defendants. We deny Ashland's and Columbia's appellate motions to dismiss because the unique circumstances of this case compel us to excuse Eastman's failure to file a formal notice of appeal. Since TRC filed a third-party complaint only against Eastman, however, it lacks standing to appeal the dismissals of the other third-party defendants and we grant those defendants' motions to dismiss as to TRC's appeal.

On the merits of the appeal, we find that summary judgment in favor of Eastman on TRC's claims was inappropriate because factual issues pertaining to the adequacy of Eastman's warnings remain to be decided. We also find that the district court erred in dismissing Eastman's third-party complaints against Ashland, Columbia, and Custom with prejudice. We therefore reverse and remand to the district court in order to determine the adequacy of Eastman's warnings.

## FACTS

In 1976, Thomas Bryant and his wife filed a products liability suit against TRC in Idaho state court. Bryant claims that he was exposed to a dangerous chemical in one of TRC's products during 1973 and 1974, and consequently contracted peripheral neuropathy.[1] TRC manufactured a lacquer thinner which contained methyl butyl ketone

Scott W. Reed, Coeur d'Alene, Idaho, for defendant-appellant.

Robert Crotty, Spokane, Wash., Alan R. Gardner, John Magel, Boise, Idaho, for third-party defendants-appellees.

Before KENNEDY and BOOCHEVER, Circuit Judges, and GRAY *, District Judge.

BOOCHEVER, Circuit Judge: .

This appeal involves disputes between the defendant and third-party defendants in a

* Honorable William P. Gray, United States District Judge for the Central District of California, sitting by designation.

1. Peripheral neuropathy is a degenerative disease of the nervous system. Bryant's symptoms included weakness in all his extremities, multiple falls and injuries, and a progressively increasing disability in his right knee joint. Bryant's neuropathy was linked to methyl butyl ketone (MBK) exposure. The parties on appeal

(MBK), which was used by Bryant's employer, Customer Furniture & Cabinets, Inc. Bryant alleges that long-term exposure to MBK while working in the paint spray shop at Custom caused the disease.

The chain of distribution of the MBK and the lacquer thinner was as follows:[2] Eastman manufactured the MBK and sold it in bulk (by tank truck) to a distributor, Ashland. Ashland sold MBK to TRC in bulk shipments. TRC used the MBK to blend a lacquer thinner, T–6, according to its own formula. When T–6 was first marketed, methyl isobutyl ketone (MIBK) was used as a solvent instead of MBK. In 1973 when MIBK became scarce, MBK was substituted, apparently at Ashland's suggestion. Columbia, a retailer, purchased T–6 from TRC in one, five and fifty-five gallon drums. Custom purchased T–6 from Columbia, and the thinner was used extensively in Custom's paint spray room, where Bryant worked.

Bryant became ill in 1974. In 1975, his condition was diagnosed as neuropathy and traced to MBK exposure. After a long period of recovery, Bryant returned to work in 1977. Bryant's initial lawsuit was brought only against TRC. He claimed that the warnings TRC provided with T–6 were inadequate; therefore the product was defective. He sought damages of $557,000. TRC brought a third-party complaint for contribution and indemnity against the MBK manufacturer, Eastman. Eastman removed the case to Idaho federal district court based on diversity jurisdiction. 28 U.S.C. §§ 1332, 1441.

In federal court, Eastman brought third-party complaints against its distributor, Ashland, and the retailer, Columbia. After extensive discovery, Eastman brought a similar complaint against the employer, Custom. The plaintiff Bryant filed an amended complaint naming Eastman, Ashland, Columbia and TRC as direct defendants. Significantly, TRC never filed complaints against Ashland, Columbia or Custom. These three defendants were only in the lawsuit because of Eastman's third-party complaints and Bryant's amended complaint.

The parties filed several motions for summary judgment, dismissal, and judgment on the pleadings. Eastman, TRC and Columbia submitted affidavits regarding their knowledge of the link between MBK and neuropathy, and the extent of the instructions and warnings provided with the product. In support of its motion for summary judgment, Ashland filed a copy of its answers to TRC's interrogatories. These documents indicate disagreement over the extent and specificity of Eastman's warnings.

On June 14, 1979, the district court granted summary judgment to Eastman on TRC's third-party complaint. The court found that Eastman had provided an adequate warning to Ashland as a matter of law, and was not required to provide warnings to other members in the chain of distribution. The other defendants named in Eastman's third-party complaint, Ashland, Columbia and Custom, were dismissed because they were brought into the lawsuit

---

do not dispute the causative link between MBK and neuropathy, and we will assume causation for the purpose of determining TRC's right of contribution or indemnity from the third-party defendants.

2. The MBK and T–6 chain of distribution is graphically indicated as follows:

*Eastman Chemical Products* (MBK manufacturer)
 —sold MBK by tank truck
*Ashland Chemical Company* (distributor)
 —sold MBK in bulk directly to TRC
*Technical Research Company* (T–6 manufacturer)

—blended MBK into T–6 lacquer thinner, and sold to retailers in one, five and fifty-five gallon drums
*Columbia Paint Company* (wholesaler-retailer)
 —sold and delivered T–6 in form received from TRC
*Custom Furniture and Cabinet Company* (employer)
 —purchased T–6 from Columbia, used by employees in paint spray room
*Thomas Bryant* (employee)
 —used T–6 at work developed peripheral neuropathy in 1973–74, apparently from MBK exposure

only by Eastman. The court also dismissed Bryant's amended complaint against Ashland and Columbia, because it found that the Idaho statute of limitations had run before they were added as direct defendants. The district court entered a final judgment reflecting the above orders on July 20, 1979.

TRC filed a notice of appeal on August 8, 1979.[3] Bryant has not appealed any of the district court orders. Trial on the underlying issues of TRC's liability for injury to Bryant has apparently been delayed pending resolution of this appeal.

## I. ASHLAND'S AND COLUMBIA'S MOTIONS TO DISMISS THE APPEAL

After TRC filed this appeal, Ashland and Columbia filed motions to dismiss. On March 3, 1980, a motions panel of the court referred the issue to this panel. We must first determine whether Eastman's failure to file a timely notice of appeal requires dismissal of Ashland and Columbia. We must also decide whether TRC has standing to appeal the district court judgments in favor of Ashland and Columbia.

The unique posture of this case raises difficult questions of appellate procedure and jurisdiction. In substance, Bryant is attempting to recover from any or all of the parties in the chain of distribution, with the exception of his employer, Custom.[4] The various defendants and third-party defendants are attempting to shift at least part of any eventual liability to the others in the

chain of distribution. Unlike the usual multi-defendant case, however, the initial lawsuit was only against TRC, an intermediate manufacturer. Because Bryant did not appeal the dismissal of his amended complaint against Ashland and Columbia, the propriety of that dismissal is not before us.

Eastman's opposition to the motions to dismiss raises a difficult issue. The Federal Rules provide for protective or cross-appeals within 14 days of the first notice of appeal. Fed.R.App.P. 4(a)(3). It is clear that Eastman was not precluded from filing a notice of appeal even if the district court judgment can be characterized as entirely favorable. As this court has stated, "[t]he risk that [the cross-appellants] might become aggrieved upon reversal on the direct appeal is sufficient." *Hilton. v. Mumaw*, 522 F.2d 588, 603 (9th Cir. 1975). Although Eastman initially had no reason to appeal the judgments dismissing Ashland, Columbia, and Custom, because Eastman had received a favorable judgment, TRC's appeal raised the possibility of reversal. Thus Eastman was put on notice that it might be brought back into the lawsuit.

Although an initial notice of appeal is mandatory and jurisdictional,[5] a protective or cross-appeal is only the "proper procedure," not a jurisdictional prerequisite once an initial appeal has been filed. *Arnold's Hofbrau, Inc. v. George Hyman Construction Co.*, 480 F.2d 1145, 1150 (D.C.Cir. 1973); 9 *Moore's Federal Practice* ¶ 204.-

---

3. The district court's final judgment did not dispose of all the issues between all the parties, and therefore is not appealable absent certification. 28 U.S.C. § 1291; Fed.R.Civ.P. 54(b). Although the district court judgment did not refer to Rule 54(b), it used the certification language of the rule: "there is not just reason for delay, [and the court therefore] expressly directs that judgment be entered." This court therefore has jurisdiction to hear TRC's appeal on the issue of liability between the defendants. The district court determination of whether "just reason for delay" exists will not be disturbed unless there is a "clear showing of an abuse of discretion." *Fed. Deposit Ins. Corp. v.*

*First Nat'l. Fin.*, 587 F.2d 1009, 1013 (9th Cir. 1978).

4. Custom was only in the lawsuit because of Eastman's third-party complaint; Bryant did not include Custom in his amended complaint. TRC and Eastman both challenge the district court dismissal of Custom. Unlike Ashland and Columbia, Custom has not filed a motion to dismiss this appeal.

5. *Browder v. Director, Dept. of Corrections*, 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978).

11[5], at 4–57 to 4–58 (2d ed. 1980); *See Rabin v. Cohen*, 570 F.2d 864, 866–67 (9th Cir. 1978). It has long been recognized that an appellate court has broad power to make such dispositions as justice requires. *Minnesota v. National Tea Co.*, 309 U.S. 551, 555, 60 S.Ct. 676, 678, 84 L.Ed. 920 (1940). In applying this principle, the Second Circuit allowed two non-appealing defendants to benefit from a reversal in favor of a third defendant. *In re Barnett*, 124 F.2d 1005, 1009 (2d Cir. 1941). *See also Kicklighter v. Nails By Jannee, Inc.*, 616 F.2d 734, 742 and n. 6 (5th Cir. 1980); *Hysell v. Iowa Public Service Co.*, 559 F.2d 468, 476 (8th Cir. 1977).

■ Eastman apparently believed that TRC's notice of appeal was sufficient to bring all parties before this court. It seeks to tag onto TRC's notice of appeal, although TRC itself did not have standing to appeal. Eastman has clearly evidenced an intent to appeal through its participation, filing motions to dismiss TRC's appeal and actively opposing Ashland's and Columbia's motions. *See Rabin*, 570 F.2d at 866. Eastman now requests that we exercise our discretionary power to retain all parties in the lawsuit if we remand the case, in order to insure an equitable resolution at trial. We do not condone Eastman's failure to file a protective appeal. Nevertheless, for several reasons we are compelled to deny Ashland's and Columbia's motions to dismiss Eastman's protective appeal. To do otherwise would be to rely on form at the expense of substance.

Trial on the underlying question of liability for Bryant's injuries would be partially frustrated if Ashland and Columbia were not participants. As we discuss later in this opinion, the central issues the jury may have to face on remand are the adequacy of Eastman's warnings to Ashland, the adequacy of Ashland's warnings to Columbia and others in the chain of distribution, and the duty Eastman owes beyond its immediate vendee, Ashland. Adversary representation of Ashland and Columbia are impor-

tant for a complete and equitable determination of liability.

This factor alone, however, would not persuade us to relieve Eastman from its failure to file a notice of appeal. We are also concerned that Eastman may have believed that an appeal was not necessary, given the language in the district court's memorandum decision. The court found that third party plaintiff Eastman was entitled to summary judgment, "[a]ccordingly, Eastman's third party complaint against Ashland, Columbia Paint and Custom Furniture is appropriately dismissed." This suggests that summary judgment in favor of Eastman rendered the third-party complaint moot; there is no indication that the district court ever considered the merits of Eastman's indemnity and contribution claims against the third-party defendants. In its initial order, the district court merely stated that Eastman's complaint was dismissed. In its amended order issued two weeks later, however, the court dismissed Eastman's complaint *with prejudice*. If the basis for the dismissal was that the third-party complaint was moot after summary judgment for Eastman, dismissal with prejudice was error, because in the event of reversal of the summary judgment in favor of Eastman the dismissal with prejudice contemplated a decision on the merits of Eastman's claims. Federal courts are without power to determine the merits of moot claims. *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974). It is conceivable that the district court reevaluated the case and considered the merits of Eastman's indemnity claim between issuing the memorandum and the amended order, but we have no way of determining this from the record on appeal.

Finally, we note that the interlocutory nature of this appeal provides some justification for Eastman's failure to file a notice of appeal. The district court certified an interlocutory appeal, finding no "just reason for delay." Fed.R.Civ.P. 54(b), see note 3 *supra*. The scope of this certification,

however, is not clear. The order in which the certification language appears grants summary judgment to Eastman, and dismisses Eastman's third-party complaint. There is no indication why the third-party complaint was dismissed with prejudice. The only statement of the district court's reasoning that we have before us strongly suggests that the merits of Eastman's indemnity complaint were never considered. Therefore it is arguable that the only issue certified to this court was the propriety of summary judgment in favor of Eastman. Eastman might well have concluded that only this narrow issue was certified, and therefore it did not need to appeal the unfavorable aspects of the district court judgment.

We must emphasize the narrow scope of our holding. It will be the unusual case where an appellee that fails to file a notice of appeal can challenge unfavorable aspects of a judgment. The unique circumstances of this case, however, justify the exercise of our discretionary power to allow Eastman to tag onto TRC's timely notice of appeal.[6] Ashland's and Columbia's motions to dismiss Eastman's appeal are denied.

■■■ TRC's notice of appeal presents a more straightforward issue. To have standing to appeal, a party must be "aggrieved by the district court order." *United States v. State of Washington, Department of Fisheries*, 573 F.2d 1117, 1118 (9th Cir. 1978). *See United States v. 5.96 Acres of Land*, 593 F.2d 884, 887 (9th Cir. 1979). A party may only appeal to protect its "own interests," not those of any other party. *Libby, McNeill & Libby v. City National Bank*, 592 F.2d 504, 511–12 (9th Cir. 1978).

In this case, TRC has no direct action against Ashland or Columbia. Therefore, TRC does not have a recognizable legal interest in whether Eastman can obtain contribution from either of them. TRC has not alleged that Eastman is insolvent; but even if Eastman could not satisfy its obligations, TRC's recourse was to bring complaints directly against the other defendants at trial. Having failed to do so, it is not in a position to appeal the dismissal of the lawsuit against the defendants. Accordingly we grant Ashland's and Columbia's motions to dismiss the appeal filed against them by TRC.

Since we find it necessary to reverse the district court's grant of summary judgment to Eastman against TRC, the dismissal of Eastman's third-party claims against Ashland, Columbia, and Custom is likewise reversed.

## II. SUMMARY JUDGMENT FOR EASTMAN

### A. The Applicable Law

This case was removed to the Idaho federal court based on diversity of citizenship. Therefore the district court was required to apply Idaho's substantive law of products liability in ruling on Eastman's motion for summary judgment against TRC. *Wirth v. Clark Equipment Co.*, 457 F.2d 1262, 1264 (9th Cir.), *cert. denied*, 409 U.S. 876, 93 S.Ct. 127, 34 L.Ed.2d 129 (1972) (Oregon products liability law applies in diversity case).

■■ Idaho applies strict products liability, adopting the approach in the Restatement (Second) of Torts § 402A (1965).[7] *Shields v. Morton Chemical Company*, 95

---

6. In effect, what we are doing is realigning the parties on appeal, with Eastman rather than TRC continuing as the appellant against Ashland, Columbia, and Custom. This is analogous to the well accepted practice of realigning plaintiffs and defendants for the purposes of diversity jurisdiction. *See Bliss v. Gotham Industries, Inc.*, 316 F.2d 848, 853–54 (9th Cir. 1963); 3A *Moore's Federal Practice* ¶ 19.03 (2d ed. 1979).

7. Restatement (Second) of Torts § 402A (1965) provides:

Special Liability of Seller of Product for Physical Harm to User or Consumer
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

Idaho 674, 518 P.2d 857, 859–60 (1974). Under section 402A, a product that is safely designed and manufactured can nevertheless be "dangerously defective" if the manufacturer has reason to know of the dangerous propensities of the product but fails adequately to warn purchasers or users. *Rindlisbaker v. Wilson*, 95 Idaho 752, 519 P.2d 421, 428 (1974). There has been no contention that MBK or the T–6 thinner was inherently defective. Bryant's theory of liability is that TRC failed to warn of the link between MBK and neuropathy, and TRC in turn contends that Eastman inadequately warned Ashland and TRC.

■ Failure to warn results in liability only in situations where the danger is not obvious to the user, and the manufacturer had reason to believe that the danger might result from a foreseeable use of the product. *Mico Mobile Sales & Leasing, Inc. v. Skyline Corp.*, 97 Idaho 408, 546 P.2d 54, 60 (1975). On this appeal, the adequacy of TRC's warnings are not in issue; we must determine whether the district court correctly concluded that Eastman's warnings were adequate as a matter of law.

In granting summary judgment for Eastman, the district court found that:

> there is no dispute that Eastman sent warnings to its immediate buyer, Ashland, and that Ashland acknowledges awareness of the dangers of MBK. It

(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his products, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
Comment j. to § 402A provides in part:
j. *Directions or warning.* In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. The seller may reasonably assume that those with common allergies, as for ex-

follows from these facts, and the Court finds as a matter of law, that Eastman's warnings to Ashland were adequate. The Court further finds that Eastman, as a supplier of MBK in bulk quantities by tank truck, is only required to give adequate warning to its immediate buyer.

Summary judgment was proper only if there were no genuine issues of material fact and Eastman was entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Schlette v. Burdick*, 633 F.2d 920, 922 (9th Cir. 1980). The evidence in Eastman's affidavits must "clearly show" that it was entitled to judgment, and TRC's documentary opposition will be sufficient to preclude summary judgment if it supports TRC's inferences, "even if it is not highly convincing or persuasive." *Bieghler v. Kleppe*, 633 F.2d 531, 533 (9th Cir. 1980).

**B. Eastman's Warning to Ashland**

■ After a careful review of the record, we conclude that summary judgment in favor of Eastman was inappropriate. The record indicates that there are disputed issues of material fact regarding the adequacy of Eastman's warnings to Ashland. Although Ashland has acknowledged awareness of MBK dangers, Eastman is not absolved from any duty it had to notify Ashland of additional MBK dangers as it became aware of them. Moreover, any acknowledgment on Ashland's part does not

ample to eggs or strawberries, will be aware of them, and he is not required to warn against them. Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger. Likewise in the case of poisonous drugs, or those unduly dangerous for other reasons, warning as to use may be required.

preclude TRC from challenging the adequacy of Eastman's warnings to Ashland. If there is any justification for insulating a manufacturer from liability beyond its immediate vendee (see discussion *infra*), it is that the vendee will pass the warnings on down the chain of distribution. *See, e. g., Jones v. Hittle Service, Inc.*, 219 Kan. 627, 549 P.2d 1383, 1394 (1976). Thus TRC has a direct interest in the adequacy of Eastman's warnings to Ashland.

Specifically, TRC points to several unresolved issues regarding Eastman's warnings to Ashland. It is not disputed that Eastman always provided its customers with warnings and handling instructions for MBK.[8] TRC contends, however, that Eastman did not warn Ashland of a possible link between MBK and neuropathy until September 25, 1973, even though it may have known of the risk earlier.[9] Furthermore, Eastman's "warning" of September 25 discounted the possible relationship, stating that nothing in industrial experience or toxicological literature suggested a connection between the disease and MBK exposure. Finally, TRC contends that the series of

bulletins Eastman issued would not have prevented Bryant's injuries even if they were received by all parties in the chain of distribution. TRC has quoted several of these bulletins to demonstrate that the specific dangers of MBK inhalation, contact, and ingestion were not fully explained. Thus the parties dispute whether Eastman provided the warning as soon as it knew of the danger, whether the warning provided was an accurate reflection of Eastman's knowledge, and whether the language of the warning was so diluted as to render it inadequate.

The adequacy of a warning under products liability is a question of fact to be left to the jury. *Dougherty v. Hooker Chemical Corp.*, 540 F.2d 174, 178 (3d Cir. 1976) (Pennsylvania law, interpreting §§ 388 and 402A of the Restatement); *Anderson v. Heron Engineering Co.*, Colo., 604 P.2d 674, 679 (1979). *See Farmer v. International Harvester Co.*, 97 Idaho 742, 553 P.2d 1306, 1312–13 (1976) (defective nature of product under Restatement § 402A is question of fact).[10] An important factor in

---

**8.** Bryant recalls reading the following warning label on containers of the T–6 thinner:

> DANGER! HARMFUL OR FATAL IF SWALLOWED. KEEP OUT OF THE REACH OF CHILDREN. If swallowed do not induce vomiting. CALL PHYSICIAN IMMEDIATELY. Avoid prolonged contact with skin and breathing vapor or spray mist. Close container after each use. Use with adequate ventilation.

It is not clear whether this warning is identical to that provided by Eastman; the quoted warning apparently was provided by TRC. TRC contends that the warnings Eastman provided did not reflect the dangers from skin contact or the link between MBK and neuropathy.

**9.** Eastman contends that the first indication it had that MBK could cause peripheral neuropathy was in 1973, when an outbreak of the disease in an Ohio fabric plant was linked to MBK exposure. Eastman was a defendant in several lawsuits arising from this outbreak. Shortly after the outbreak, R.C. Dubberly of Eastman sent a letter to Eastman's customers suggesting that "it would seem prudent that employees avoid all unnecessary exposure to MBK."

TRC points out that the letter downplays the importance of the connection between MBK

and neuropathy. Additionally, TRC has been unable to determine whether Eastman knew of the possible connection before the Ohio outbreak. While it is not disputed that Ashland received a copy of the Dubberly letter, TRC denies ever having received the letter. The affidavits of Fulton (offered by Eastman) and Daley (offered by TRC) are in conflict on this issue. *See* note 11 *infra*.

**10.** Summary judgment is rarely appropriate in negligence cases. The jury should decide the reasonable nature of the conduct in issue. *Arney v. United States*, 479 F.2d 653, 660 (9th Cir. 1973); *Fairchild v. Olsen*, 96 Idaho 338, 528 P.2d 900, 902 (1974). Although this case is brought under a strict liability theory, the duty to warn is essentially a determination of foreseeability and reasonableness; section 388 (negligence) and section 402A (strict liability) of the Second Restatement of Torts involve very similar standards. *Brizendine v. Visador Co.*, 437 F.2d 822, 825 (9th Cir. 1970); *Shell Oil v. Gutierrez*, 119 Ariz. 426, 581 P.2d 271, 278 (App.1978). *See* Model Uniform Product Liability Act § 104(C), *reprinted in* 44 Fed.Reg. 62714, 62724 (1979); J. Dooley, *Modern Tort Law* § 32.14, at 256 (1977); Annot., 53 A.L.R.3d 239, 244 (1973).

evaluating the adequacy of a warning is the clarity of the warning. Misleading representations of safety accompanying a warning may render the warning inadequate. *See Carmichael v. Reitz*, 17 Cal.App.3d 958, 95 Cal.Rptr. 381, 401 (1971); Phillips, *A Synopsis of the Developing Law of Products Liability*, 28 Drake L.Rev. 317, 351–52 (1979); Model Uniform Product Liability Act § 104(C), *reprinted in* 44 Fed.Reg. 62714, 62724 (1979). While we do not foreclose the possibility that under some circumstances the adequacy of warnings may be decided by summary judgment, here TRC introduced sworn statements which indicate that if given an opportunity to develop its theory at trial, it may be able to convince a jury that Eastman's warnings were insufficient. In finding that Eastman provided adequate warnings as a matter of law, the district court improperly removed this crucial determination from jury consideration.

### C. Eastman's Duty to Warn Others in the Chain of Distribution

 Since trial will be required, we find it advisable to address another issue. The district judge concluded that as a bulk manufacturer, Eastman's only duty was to warn

its immediate vendee. Thus the court ignored the factual disputes regarding the extent of the warning TRC and others in the chain of distribution received.[11] We recognize that the construction of state law by a federal judge sitting in the state will be accepted on review unless "clearly wrong," *Anderson v. Allstate Insurance Co.*, 630 F.2d 677, 682 (9th Cir. 1980), but we are concerned with the court's interpretation in this case. The district judge did not cite any authority for his conclusion that a bulk seller is required to give adequate warning only to its immediate vendee, and we cannot find any Idaho authority directly on point.[12]

In examining interpretations of section 402A from other jurisdictions, we note that except in the specific relationships discussed below, the adequacy of a bulk manufacturer's warning to those other than its immediate vendee is usually held to be a jury question. The proposition that a bulk manufacturer has a duty to warn only its immediate vendee, however, draws some support from a Kansas case interpreting the negligence provision of the Restatement, section 388. *Jones v. Hittle Service, Inc.*, 219 Kan. 627, 549 P.2d 1383, 1394 (1976). In *Jones*, a propane gas manufacturer and its distribu-

---

11. In an affidavit offered by Eastman, R.A. Fulton claimed that he had contacted Robert Daley (a TRC employee in charge of purchasing), told him of the possible link between MBK and neuropathy, and agreed to send him a copy of the Dubberly letter of September 25, 1973. *See* note 9 *supra*. Fulton also claimed that he and Daley discussed a case of peripheral neuropathy suffered by a TRC employee.

TRC offered Daley's affidavit in opposition to Eastman's summary judgment motion. Daley did not recall the conversation with Fulton, denied ever receiving the Dubberly letter, and denied that any TRC employer ever had an employee diagnosed or even suspected of contracting an MBK-related disease.

These two affidavits alone indicate that there are material issues in dispute regarding the extent and adequacy of the notice provided by Eastman and received by TRC. The specific points of dispute reflect the broader issue that should be decided by the jury, namely whether Eastman fulfilled its obligation to warn MBK purchasers and users of the risks associated with the product.

12. *See Mico Mobile Sales & Leasing, Inc. v. Skyline Corp.*, 97 Idaho 408, 546 P.2d 54, 60 (1975). The *Mico* court held that a chemical manufacturer did not have a duty to warn Mico, a mobile home manufacturer, of the dangers of methanol because Mico knew of the dangers. Eastman argues that *Mico* controls in the instant case. The *Mico* decision, however, did not address the question whether a bulk manufacturer has a duty to warn beyond its immediate vendee. The basis of the court's ruling in favor of the chemical manufacturer was that the danger in putting methanol in the plumbing system was an obvious danger. *See Garner v. Crater Farms, Inc.*, 96 Idaho 383, 529 P.2d 779 (1974). TRC's contention in the instant case is that the dangers of MBK exposure were not obvious, and that Eastman had a duty to provide the most extensive warnings possible once the dangers became apparent.

tor were sued after a gas explosion killed three people. The court held that a manufacturer

> who sells ... to a distributor in bulk fulfills his duty to the ultimate consumer when he ascertains that the distributor to whom he sells is adequately trained, is familiar with the properties of the gas and safe methods of handling it, and is capable of passing on his knowledge to his customers.

*Id.* Even the *Jones* court, however, recognized some duty to insure that the purchaser is capable of passing the warning on to others in the distribution chain.

A similar approach has also been adopted in cases holding that a bulk manufacturer can rely on an employer-purchaser to pass on warnings to employees, *Younger v. Dow Corning Corp.*, 202 Kan. 674, 451 P.2d 177, 184 (1969), and can rely on a doctor-purchaser to pass on prescription warnings to patients, *Terhune v. A. H. Robins Co.*, 90 Wash.2d 9, 577 P.2d 975, 977–79 (1978). The rationale behind these cases is that the manufacturer is justified in relying on the employer or doctor to pass on its warnings. The prescribing physician acts as a "learned intermediary" who is expected to exercise professional judgment on the patient's behalf. *Terhune*, 577 P.2d at 978. The employer has complete control over the working environment, and there is little a manufacturer can do to enforce compliance with suggested precautionary measures. *Younger*, 451 P.2d at 184.[13]

In contrast, a recent Arizona case, in a factual situation quite similar to the instant case, holds that a bulk seller or manufacturer is not relieved from its duty to warn later purchasers merely because it warned the immediate seller. *Shell Oil Co. v. Gutierrez*, 119 Ariz. 426, 581 P.2d 271 (App. 1978). Shell Oil was sued after one of its products ignited, injuring a welder. The Shell chemical had been repackaged by an intermediate purchaser, and Shell argued that it was not liable as a matter of law because "adequate warning to the vendee is all that can reasonably be required of the bulk manufacturer who has no control over the container." *Id.*, 581 P.2d at 277. The court rejected this argument and affirmed a verdict against Shell, finding that the adequacy of a warning is a question for the trier of fact, and a manufacturer's warning to its intermediary is only one factor for the jury to consider. *Id.* 581 P.2d at 277–79. *See Hohlenkamp v. Rheem Manufacturing Co.*, 123 Ariz. 535, 601 P.2d 299, 301 (App. 1979) (summary judgment inappropriate because expert testimony presented material issue whether failure to warn was unreasonably dangerous).

Other courts have recognized that a warning to the immediate purchaser does not necessarily discharge a manufacturer's duty. In a case involving the distribution of polio vaccine, this court held that the manufacturer has a responsibility to see that its warnings reach the consumer, "either by giving warning itself or by obligating the purchaser to give warning." *Davis v. Wyeth Laboratories Inc.*, 399 F.2d 121, 131 (9th Cir. 1968) (Montana law, interpreting § 402A of the Restatement). A Washington court recently held that manufacturer's duty to warn is non-delegable. The court found that it was a jury question whether an employer's failure to pass on the manufacturer's warnings rendered the

---

**13.** The Model Uniform Product Liability Act recognizes that the employer and physician cases rest on the assumption that a supervising expert is in the best and perhaps the only position to pass on a manufacturer's warnings. *See* note 10 *supra*, 44 Fed.Reg. at 62725. *See also Carmichael v. Reitz*, 17 Cal.App.3d 958, 95 Cal.Rptr. 381, 400–01 (1971); *Reed v. Pennwalt Corp.*, 22 Wash.App. 718, 591 P.2d 478, 481 (1979).

By contrast, a manufacturer may have greater financial and informational resources than its distributor, and thus be in a better position to directly contact vendees farther down the chain of distribution. The better rule is that a manufacturer is "liable for failure to adequately warn other persons who might be foreseeably subjected to danger," not just the immediate vendee. 2 L.Frumer & M.Friedman, *Products Liability* § 8.03[3], at 176–80 (1975).

employee's accident unforeseeable. *Minert v. Harsco Corp.*, 26 Wash.App. 867, 614 P.2d 686, 691 (1980). *See also Frazier v. Kysor Industrial Corp.*, Colo.App., 607 P.2d 1296, 1300–01 (1980) (whether manufacturer's failure to warn rendered it liable under § 402 to ultimate user is a question for jury); *First National Bank v. Nor-Am Agricultural Products, Inc.*, 88 N.M.App. 74, 537 P.2d 682, 693 (1975) (jury question whether manufacturer had duty to warn consumers directly); *Casetta v. United States Rubber Co.*, 260 Cal.App.2d 792, 67 Cal.Rptr. 645, 660–62 (1968) (judgment notwithstanding the verdict on manufacturer's duty to warn beyond immediate vendee is error; adequacy of warning is jury question).

The recent cases evaluating a manufacturer's duty to warn indicate that there should be no absolute rules; the adequacy of a warning is a question of fact to be decided on a case by case basis. In some situations, such as where a drug manufacturer provides warning to a prescribing physician, a court could find that an adequate warning to the immediate vendee was sufficient. In most cases, however, the jury should determine the reasonableness and adequacy of the warnings provided under the unique circumstances of each case. Upon remand the trial judge should determine whether, in evaluating Eastman's conduct, the jury should consider if the warnings given adequately indicated to those in the chain of distribution the scope and nature of the risk inherent in MBK. If the jury does consider this issue, it should do so in light of Eastman's knowledge of the dangers and the feasibility of issuing more extensive or complete warnings. *See Shell Oil Co. v. Gutierrez*, 119 Ariz. 426, 581 P.2d 271, 278–79 (App.1978); *Robinson v. Williamsen Idaho Equipment Co.*, 94 Idaho 819, 498 P.2d 1292, 1299–1300 (1972); *Little v. PPG Industries, Inc.*, 92 Wash.2d 118, 594 P.2d 911, 914–15 (1979).[14]

We note the liberal approach that the Idaho Supreme Court has taken in Section 402A actions.[15] Upon remand, the trial court should reexamine its decision that under Idaho law, warnings were required to be made only to Eastman's immediate buyer, Ashland. The court should determine whether jury issues are presented as to whether Eastman should have required Ashland and its other distributors to pass on Eastman's warnings to others in the chain of distribution (such as TRC), whether Eastman should have obtained Ashland's customer list and directly warned secondary vendees, or alternatively whether Eastman in fact provided adequate warnings to others in the chain through Ashland and trade journal publications.

14. Whether a manufacturer has met its duty to warn is a determination of reasonableness and foreseeability, even when the theory of recovery is strict liability under § 402A of the Restatement. *See* note 10 *supra.* The Model Uniform Product Liability Act has identified five key areas of evidence the trier of fact should consider in evaluating a manufacturer's instructions or warnings:

(a) The manufacturer's ability, at the time of manufacture, to be aware of the product's danger and the nature of the potential harm;

(b) The manufacturer's ability to anticipate that the likely product user would be aware of the product's danger and the nature of the potential harm;

(c) The technological and practical feasibility of providing adequate warnings and instructions;

(d) The clarity and conspicuousness of the warnings or instructions that were provided; and

(e) The adequacy of the warnings or instructions that were provided.
Model Uniform Product Liability Act § 104(C)(2), *reprinted in* 44 Fed.Reg. 62714, 62721 (1979).

15. *See generally Duignan v. A. H. Robins Co.*, 98 Idaho 134, 559 P.2d 750, 754 (1977) (court has jurisdiction over a non-resident manufacturer because placing dangerous goods in the stream of commerce creates a duty to defend injury wherever it occurs); *Farmer v. International Harvester Co.*, 97 Idaho 742, 553 P.2d 1306, 1312–13 (1976) (existence of defect is a jury question); *Rindlisbaker v. Wilson*, 95 Idaho 752, 519 P.2d 421, 428 (1974) (in evaluating duty to warn, obviousness of danger is a jury question).

## CONCLUSION

We deny Ashland's and Columbia's motions to dismiss Eastman's appeal, because Eastman has evidenced an intent to appeal, and the unique circumstances of this case warrant full participation of all the defendants and third-party defendants. TRC does not have standing to appeal, however, and we grant Ashland's and Columbia's motions to dismiss as to TRC. On the merits of this case, we find that summary judgment in favor of Eastman was inappropriate. First, there are material issues of fact regarding the adequacy of Eastman's warning to Ashland. Second, we believe that the trial court should reconsider its ruling that a bulk manufacturer is insulated from liability beyond its immediate vendee as a matter of Idaho law. The court should determine whether the adequacy of the manufacturer's warning as to others in the chain of supply presents a jury question. Because we reverse the summary judgment in favor of Eastman, we reverse the district court dismissal of Eastman's third-party complaints against Ashland, Columbia and Custom and direct the district court to consider the merits of those claims on remand.

REVERSED AND REMANDED.