Rosemarie MANNING,
Plaintiff-Appellant,

v.

ASHLAND OIL COMPANY,
Defendant-Appellee.

No. 82–3101.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 16, 1983.
Decided Nov. 9, 1983.

See, also, 498 F.Supp. 1382.

Barry M. Woldman, Chicago, Ill., for plaintiff-appellant.

Lawrence P. Bemis, Kirkland & Ellis, Chicago, Ill., for defendant-appellee.

Before BAUER and WOOD, Circuit Judges, and NEAHER, Senior District Judge.*

NEAHER, Senior District Judge.

Rosemarie Manning (plaintiff) appeals the district court's entry of a directed verdict pursuant to Fed.R.Civ.P. 50 in favor of defendant Ashland Oil Company (Ashland), which dismissed her claim that Ashland be held responsible for injuries she sustained

---

* The Honorable Edward R. Neaher, Senior District Judge for the Eastern District of New York, is sitting by designation.

while using a can of lacquer thinner she had purchased from others.

The following facts are not in dispute. In this case Ashland was a bulk supplier of lacquer thinner. At the request of Century Industries, Inc. (Century), Ashland duplicated a sample blend of lacquer thinner. Century repackaged the thinner into retail size containers and sold it to Yenkin Majestic Paint Company (Yenkin), which copied a Century label and attached it to the containers. The label read:

MAJESTIC LACQUER THINNER

A Specially Formulated Thinner for Reducing Lacquers, Removing Old Lacquer Coats, Road Tar and Stains or for Cleaning Brushes and Spray Guns.

DANGER. FLAMMABLE MIXTURE

\* \* \* \* \* \*

Do not take internally. If swallowed, do not induce vomiting. CALL PHYSICIAN IMMEDIATELY. Keep away from heat, sparks, and open flame. Avoid prolonged contact with skin and breathing of vapor or spray mist. In case of contact with skin or eyes, flush repeatedly with cold water. Close container after each use. Do not transfer contents to bottles or other unlabeled containers. Use with adequate ventilation.

KEEP OUT OF THE REACH
OF CHILDREN.

Distributed by YENKIN MAJESTIC Paint Corporation manufacturers. Columbus, Ohio 43219.

Yenkin sold the lacquer thinner to Woolco, a retailer, where, in 1975, plaintiff went to purchase a product to remove tar stains from her kitchen floor. Woolco's employee recommended the lacquer thinner.

Plaintiff used the thinner to remove the tar stains and, pleased with the result, applied the product to her entire kitchen floor. Lacquer thinner is a flammable substance; the mixture in question had a flashpoint of 28 °. It ignited and subsequently injured the plaintiff. The source of the ignition could have been static electricity, the turning on of an electric motor, the type of which would be found on a kitchen appliance such as a refrigerator or any generation of a small spark.

Plaintiff presents two issues on appeal:

1. Whether the trial court erred in not allowing the jury to determine if Ashland had satisfied its common law duty to warn and instruct an ultimate user of the lacquer thinner; and

2. Whether the trial court erred in not allowing the jury to determine whether Ashland had satisfied its statutory duty to examine the label adopted by subsequent vendors of the lacquer thinner.

I.

The parties agree that the law of Illinois has not established the extent of the duty of a manufacturer or supplier to warn the ultimate user of the dangers associated with a product. Plaintiff relies upon decisions from other jurisdictions which have imposed a duty upon the manufacturer to warn ultimate consumers, or at least to ascertain that a middleman is knowledgeable enough about the product so as to warn the ultimate consumer. She does not, however, address the issue at hand, which is what effect the Illinois courts would give these decisions in light of her evidence and existing Illinois law.

In *Shell Oil Co. v. Gutierrez*, 119 Ariz. App. 426, 581 P.2d 271 (1978), which plaintiff cites, the court applied comment n to section 388 of the Second Restatement of Torts to reject a claim by Shell Oil Company that it should not be expected to warn remote users beyond its immediate vendee. Shell had sold xylene to a packager who placed it in metal drums and sold it to a retailer. The metal drums were very dangerous because they were never completely emptied of the xylene, which, when vaporized, tended to explode. Consequently, the drums should have been returned immediately after they were used. Shell did not pass this information to any of the middlemen. As a result, the court found that

there was adequate evidence that Shell had not adequately warned the middlemen so as to sustain the verdict.

Section 388 provides:

"One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

Comment n is intended to explain clause c of the section. For section 388 to apply at all, however, the plaintiff must demonstrate that the supplier satisfies all three clauses of the section.

In the case at bar, the evidence discloses that Ashland did not know and had no reason to know that the lacquer thinner was likely to be dangerous for the use for which it was supplied. Century had requested "a good general purpose lacquer thinner" and had furnished a sample can of a lacquer thinner it was buying from another company. Its representative stated that he wanted "something like we have." Ashland complied by duplicating the blend, which was safe and was subsequently properly labeled for its intended use as lacquer thinner. From the circumstances, Ashland had no reason to expect or foresee that Century would advise a consumer to use the lacquer thinner for removing tar stains or that a consumer would use it to clean an entire kitchen floor. Thus, plaintiff did not submit sufficient evidence upon the require-

ment of clause a, and the case would not have gone to the jury under this theory despite any duty to warn which we might add to the law of Illinois.

Plaintiff also relies upon *Bryant v. Technical Research Co.,* 654 F.2d 1337, 1346–48 (9th Cir.1981) (Idaho law), where the court concluded that "the adequacy of a bulk manufacturer's warning to those other than its immediate vendee is usually held to be a jury question." *Id.* at 1346. The court's statement is not absolute because a defendant might be able to present evidence entitling it to a judgment as a matter of law upon this issue. The facts of the instant case, however, do not involve a failure to warn. The parties do not dispute that the warnings contained on the label were adequate for a lacquer thinner; thus, the only issue remaining is whether Ashland had a duty to inspect the middleman's label or packaging to determine if the warning was adequate for the lacquer *vis-a-vis* its unintended use as a cleaning agent to remove tar stains.[1]

■ Perhaps anticipating our conclusions with respect to *Bryant* and *Shell Oil,* plaintiff also relies upon cases which require the supplier to ascertain that the middleman is knowledgeable enough about the product as to be able to provide adequate instructions and warnings to the consumer about its use. *E.g., Burton v. L.O. Smith Foundry Products Co.,* 529 F.2d 108, 111 (7th Cir.1976) (Indiana law) (*per curiam*); *Jones v. Hittle,* 219 Kan. 627, 549 P.2d 1383, 1393–94 (1976). These cases do not mandate that the supplier must always inspect the middleman's packaging and labeling in order to satisfy this obligation. Defendant notes that many jurisdictions have refused to attach a duty to warn remote users because the supplier cannot control or monitor the middleman's packaging and labeling. *Shell Oil Co. v. Harrison,* 425 So.2d 67, 70 (Fla.App.1982); *Hill v. Wilmington Chemical Corp.,* 279 Minn. 336, 156 N.W.2d 898, 902 (1968); *cf. E.I. duPont de Nemours & Co. v. McCain,*

---

1. The parties do not dispute that the product was not safe for tar removal and that Ashland

had no involvement in the preparation of the label which Yenkin copied.

414 F.2d 369 (5th Cir.1969) (Tex. law). Based upon the evidence, we need not consider whether the Illinois courts would impose this lesser duty, much less a duty to inspect, upon a supplier. The evidence reveals that Ashland satisfied this obligation.

Century, in business since 1938, is a manufacturer of sealants, paint and paint-related products. It also repackages solvents, one of which is lacquer thinner, and had been repackaging lacquer thinner for 15 to 20 years at the time of plaintiff's injuries. Further, it represented itself as being "as knowledgeable as other manufacturers" concerning the propensities of the solvents, including lacquer thinner, that it repackaged. The company's representatives, with whom Ashland had dealt, were aware that lacquer thinner has a low flash point and is flammable.[2] They testified that they never intended that the product be used as a cleaning agent in the home.

The courts which impose a duty to learn a middleman's knowledge of a product allow the supplier to rely upon the middleman, using his knowledge or expertise, to pass on any warnings or instructions for the safe use of the product. *Younger v. Dow Corning Corp.,* 202 Kan. 674, 451 P.2d 177 (1969) (manufacturer may rely upon employer to communicate its instructions about usage, contained on the labels of chemicals, to employee-users); *Reed v. Pennwalt Corp.,* 22 Wash.App. 718, 591 P.2d 478 (1979), *appeal dismissed,* 93 Wash.2d 5, 604 P.2d 164 (1979) (same) (*per curiam*); *Terhune v. A.H. Robins Co.,* 90 Wash.2d 9, 577 P.2d 975, 979 (1978) (manufacturer entitled to rely upon physician to communicate a warning to patient-consumer). The label on the lacquer thinner demonstrates that Ashland did not unreasonably rely upon Century's explicit and implicit representations of knowledge about lacquer thinner. The product was properly labeled for use as a lacquer thinner. It would have been highly unlikely, under the circumstances, however, for Ashland to have foreseen that Century would add an inappropriate use to an otherwise adequate warning label.[3]

"The care to be exercised in discharging the duty to warn is therefore measured by the dangerous potentialities of the commodity as well as the foreseeable use to which it might be put." *Dougherty v. Hooker Chemical Corp.,* 540 F.2d 174, 179 (3d Cir.1976) (Pa. law) (relying upon comment n, section 388, Restatement 2d of Torts).

Plaintiff's summary of the evidence belies her misunderstanding of the proper measure of Ashland's responsibility:

"In the instant case, the evidence before the Court when viewed most favorably to the appellant shows that Century was a repackager, not a manufacturer of solvents (R. 166). At the time lacquer thinner was purchased from Ashland and for several years preceding, Century did not have a quality control department (R. 353), and did not have a lab (R. 353). None of the officers had a degree in Chemistry (R. 353). Century had for a time an in house chemist who worked on new formulations (R. 354). He had nothing to do with lacquer thinner (R. 354). No one at Century checked the flammability characteristics of the lacquer thinner during the five (5) year period prior to the time of this occurrence (R. 354, 6). Century had no expertise in the preparation or formulation of lacquer thinner (R. 359, 60). No one at Century tested the thinner or tested its flashpoint (R. 362). No one at Century knew what the basis

---

**2.** The chemical properties of lacquer thinners were discussed by plaintiff's expert witness. Their exact nature is not germane to this appeal because the parties do not dispute that the lacquer thinner at issue was not safe for use as a cleaning agent in the home.

**3.** Alternatively, defendant argues that Century's label constitutes a substantial change in the lacquer thinner by a third party. While we would agree that Century's label was arguably

a significant cause of the accident, the label did not alter the dangerousness of the lacquer thinner as a tar stain remover. The gravamen of the defense appears to be an alteration in the product itself as occurred in *Gasidel v. Federal Press Co.,* 78 Ill.App.3d 222, 33 Ill.Dec. 517, 521, 396 N.E.2d 1241, 1245, and *Karabatsos v. Spivey Co.,* 49 Ill.App.3d 317, 7 Ill.Dec. 158, 160–61, 364 N.E.2d 319, 322–23.

was for saying the thinner could be used to remove tar stains (R. 362, 63). The thinner was [purchased] without any knowledge as to its flashpoint (R. 364). Century didn't expect it would be used in the home (R. 366) and therefore didn't test the product to see if it was safe for use in the home." Appellant's Brief at 16.

■ We are not concerned with the reasonable inferences that may be drawn from the circumstances of the actual internal operation of Century's business, but rather, whether Ashland acted reasonably in light of what it objectively knew about the party to whom it sold the lacquer thinner. This statement of the applicable standard is consistent with Illinois' rule that "[w]hether harm was legally foreseeable bears on what was apparent to the defendant at the time of his complained of conduct and not what may appear through the exercise of hindsight. *Cunis v. Brennan* (1974), 56 Ill.2d 372, 308 N.E.2d 617." *Anderson v. Yellow Cab Co.,* 28 Ill.App.3d 656, 329 N.E.2d 278, 281.

■ In *Terhune v. A.H. Robins Co., supra,* the court allowed the manufacturer to rely upon the physician's expertise about the product, even though the physician had not actually communicated the warning he had received to the patient-user. Similarly, Ashland reasonably relied upon Century not to label the lacquer thinner so as to suggest unintended or unsafe uses. Thus we agree with the district court's characterization of the evidence:

"The uncontradicted picture was one of an experienced buyer, knowledgeable in the proper uses of lacquer thinner, as Mr. Duwe described to Mr. Brothers, that he himself was indeed knowledgeable about those proper uses, and then ordering that product, this experienced buyer for all of those proper general all purpose lacquer thinner uses.

"There was not a word or a hint anywhere in this evidence focusing once again on the critical relationship between Century and Ashland, to put Ashland on notice that the product might be put or

might be ambiguously labeled so that others might be led to put the product to any totally unsuited uses."

As a result, if Ashland had such a duty under Illinois law, we find that it met that duty and consequently, we need not determine, in this case, whether Illinois would impose such a duty to inspect labels in general.

## II.

■ Plaintiff contends that the district court erred in not submitting the case to the jury under the Consumer Products Safety Act, 15 U.S.C. 2072(a). She argues that Ashland's failure to comply with 15 U.S.C. 2063 constituted a basis for a finding of negligence.

Based upon the record, we need not consider this issue. After the district court had reached its decision to enter a directed verdict, it summarized the evidence and explained its reasoning to the jury and then discharged them. It then stated:

"I reviewed, as well as having reviewed the transcripts that you were good enough to provide me, I reviewed both the law which I will comment on only briefly in terms of characterizing, and also the prior pleadings on this matter.

"I found, accurately, that it had been represented by Ashland that this claim had been one asserted in Count 5 of the fifth amended complaint that was dismissed by Judge Crowley at the status report that immediately preceded April of 1979.

"Then at that point the plaintiff moved to file the sixth amended complaint saying in the course of that, 'In view of the Court's recent ruling, the plaintiff is asking leave of Court to file her sixth amended complaint at law, wherein the plaintiff has attempted to cure the pleading defects upon which the Court based its ruling.'

"Now, the sixth one asserted no claims under that statute [Consumer Products Safety Act], and therefore, apart from other matters, I would find it improper to seek to reintroduce that kind of claim at

the trial after it had been out of the case for three and a half years. That is really not an appropriate basis for bringing the case to issue on that type of a claim."

The record discloses that count V of the fifth amended complaint, which introduced plaintiff's theory under the Consumer Products Safety Act into the case, was dismissed at a status hearing held March 2, 1979:

"For the reasons stated in open court, defendant Ashland's motion to dismiss Count 5 of the Amended Complaint is granted." R. at 171.

The sixth amended complaint contains no mention of this claim.

"It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *International Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir.1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978); *see LaBatt v. Twomey,* 513 F.2d 641, 651 (7th Cir.1975).

Thus, as the trial court ruled, the theory of recovery asserted in count V of the fifth amended complaint was not before the jury.

There being no error in the judgment of the district court, it is affirmed.