132 F.3d 40
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
PEOPLE of the Territory of Guam, Plaintiff-Appellee,
v.
Billy Cao CRUZ, Defendant-Appellant.
 No. 96-10466.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted August 14, 1997.
Dec. 11, 1997.
 
 1
 Appeal from the District of Guam, Appellate Division GOODWIN, Circuit Judge, and MUNSON and UNPINGO, District Judges, Presiding.
 
 
 2
 Before TASHIMA and THOMAS, Circuit Judges, and SEDWICK,** District Judge.
 
 
 3
 MEMORANDUM*
 
 INTRODUCTION
 
 4
 Billy Cao Cruz was convicted in the Guam Superior Court of manslaughter in Guam's first drive-by shooting. At approximately 1:00 a.m. on October 16, 1993, Cruz and four members of the 3BZ gang, Michael Conde, Norbert Dizon, Henry Siquig, and Marcos Tapiceria, were driving around looking for members of a rival gang, the Bye Bye Boyz ("Byes"), to avenge an earlier confrontation between the gangs. While driving in an area where the Byes were known to congregate, the men encountered three cars driving toward them. Tapiceria recognized one car and shouted, "there's the Byes." Cruz, who was seated in the front passenger seat holding a loaded weapon, fired at the vehicles. One shot struck and killed Walter O. Muya, a passenger in one of the cars.
 
 
 5
 During the investigation of the shooting, the men were questioned by the police. Three--Conde, Dizon, and Tapiceria--gave statements identifying Cruz as the shooter. When questioned, Cruz denied shooting Muya and stated that he was elsewhere at the time of the shooting. After giving a written statement, Cruz learned that he might have been implicated by Conde, Dizon, and Tapiceria, so he provided a second written statement. The interview concluded when Cruz said, "I think I should have my father or a lawyer present before I tell you the truth about what really happened, because I do not wanna put--dig myself into a deep grave. I need advice." Indictments were returned against Cruz, Conde, Dizon, and Tapiceria. Conde, Dizon, and Tapiceria entered into plea agreements with the government and agreed to testify against Cruz.
 
 
 6
 At Cruz's trial Conde, Dizon, Siquig, and Tapiceria all testified that Cruz was the shooter. On cross-examination, defense counsel exposed numerous inconsistencies in the details of their pretrial statements and trial testimony. Nevertheless, the jury found Cruz guilty of manslaughter, a lesser included offense of aggravated murder, and two firearm charges. Cruz's motion for a new trial, based on prosecutorial misconduct during closing argument, was denied as untimely and he was sentenced. Cruz appealed to the District Court of Guam, Appellate Division, which affirmed.
 
 INTRODUCTION
 
 7
 Cruz asserts that numerous comments made by the prosecutor during closing and rebuttal arguments deprived him of his right to a fair trial under the Fifth and Fourteenth Amendments to the United States Constitution. Cruz argues that these instances of prosecutorial misconduct, when viewed either separately or cumulatively, require that his conviction be reversed.
 
 
 8
 At trial, Cruz's lawyer did not object to some of the errors of which he now complains. In United States v. Olano, 507 U.S. 725, 731 (1993), the United States Supreme Court explained:
 
 
 9
 "No procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." Yakus v. United States, 321 U.S. 414, 444 (1944). Federal Rule of Criminal Procedure 52(b), which governs on appeal from criminal proceedings, provides a court of appeals a limited power to correct errors that were forfeited because not timely raised in district court.... It is paired, appropriately, with Rule 52(a), which governs nonforfeited errors. Rule 52 provides:
 
 
 10
 "(a) HARMLESS ERROR. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.
 
 
 11
 (b) PLAIN ERROR. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
 
 
 12
 To establish plain error under Rule 52(b), Cruz must show that: 1) there was error; 2) the error was clear or obvious; and 3) the error affected substantial rights. Olano, 507 U.S. at 732-35. Reversal for plain error is only, warranted if the error seriously affects the fairness, integrity of public reputation of judicial proceedings or where failing to reverse a conviction would amount to a miscarriage of justice. United States v. Young, 470 U.S. 1, 15 (1985). When considering whether or not a prosecutor's remarks were improper, his statements must be viewed in the context of the entire trial to determine whether the conduct affected the fairness of the trial Id. at 12.
 
 
 13
 Errors properly noticed on appeal may be divided into two categories, constitutional and nonconstitutional errors. If an error is of constitutional magnitude, the conviction must be reversed unless it appears that the error was harmless beyond a reasonable doubt. Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986). Where an error does not rise to constitutional dimensions, a conviction will be affirmed so long as it is more probable than not that the error did not affect the verdict. United States v. Erickson, 75 F.3d 470, 479 (9th Cir.1996).
 
 A. Alleged Constitutional Errors
 1. Comment Cruz's Failure to Testify
 
 14
 It is undisputed that prosecutors are forbidden to comment on a defendant's decision not to testify. Such a comment would violate a defendant's Fifth Amendment privilege against self-incrimination. United States v. Tarazon, 989 F.2d 1045, 1051 (9th Cir.1993). Cruz asserts that the prosecutor impermissibly made the following two statements regarding his failure to testify at trial:
 
 
 15
 And it sure doesn't make any sense that someone like Billy Can Cruz, this CRIP from California, would cry, sitting there in that interview room knowing he's about to be charged with murder. He would be so mad. He would tell the police: "Yeah, I was there. Yeah, I was in that room. I was in that car, but I wasn't the shooter. And I'll tell you who was." And for you to believe that he would sit there silently and allow himself to be charged like that and not say a word is ridiculous. He was picked up again on December 17. And again he had the opportunity to think about it, that those guys--if you believe what the defense said--that they were framing him, and that he would sit there and not say a word 'til this very day. Ladies and gentlemen. It simply doesn't make sense. (Emphasis added) (RT Vol. XXVI, 6/14/95: 129-131. ER 38-39).
 
 
 16
 Do you think Billy would sit there while Henry Siquig was saying he was the shooter, if Billy knew the truth that Henry was the shooter, and he'd just sit there and never say a word. (RT Vol. XXVIII, 6/6/95: 30. ER 50).
 
 
 17
 While defense counsel made no objection to the prosecutor's second statement, he did object to the first of the prosecutor's commentaries arguing at side bar that the prosecutor impermissibly commented on Cruz's failure to testify. The transcript of the argument at side bar reveals that the trial judge believed the initial comments were about Cruz's behavior during his interrogation. However, the judge also recognized the possibility that the jury could interpret the comments as applying to Cruz's failure to testify at trial. Therefore, she instructed the jury:
 
 
 18
 Ladies and gentlemen, he sure that you don't misunderstand [the prosecutor's] remark, let me make it clear to you that a defendant has no obligation to testify during a trial; he need not present any evidence or testify. And you'll be given a formal instruction on that in my instructions. Please keep that in mind.
 
 
 19
 A prosecutor's comment impermissibly calls attention to the defendant's failure to testify if it "is manifestly intended to call attention to the defendant's failure to testify or is of such a character that the jury would naturally and necessarily take it to be a commert on the failure to testify." Tarazon, 989 F.2d at 1051-52. Cruz argues that the phrase, " 'til this very day" could be interpreted to mean his failure to testify at trial. Although not entirely free of ambiguity, when taken in context, the prosecutor's comments focused attention on Cruz's behavior and statements made to the police when he was interrogated, not on his failure to testify at trial. Moreover, the court's curative instruction eliminated any tendency of the jury to take the statement as a comment on the defendant's failure to testify. See Burks v. Borg, 27 F.3d 1424, 1431 (9th Cir.1994); United States v. Alvarado, 838 F.2d 311, 317 (9th Cir.1987).
 
 
 20
 Cruz's argument that the curative instruction was inadequate because it did not specifically instruct the jury that it could not draw negative inferences from the defendant's decision not to testify is not persuasive. The trial judge's initial curative instruction advised the jury that they would receive a formal instruction later. The court's closing instructions included one which read: "You must not draw any inference from the fact that a defendant does not testify. Further you must neither discuss this matter nor permit it to enter into your deliberations in any way."
 
 
 21
 Cruz also asserts that the prosecutor's second statement directed attention to the fact that he remained silent during Siquig's trial testimony. However, a review of the record reveals that when examined in context the statement does not suggest a "manifest intent" to call attention to the fact that Cruz did not testify. Rather, this statement, too, is directed at Cruz's behavior during the investigation. Certainly, the jury would not "naturally and necessarily" interpret the prosecutor's statements to focus on Cruz's failure to testify at the trial.
 
 
 22
 We are convinced that both of the comments were harmless beyond a reasonable doubt.
 
 2. Comment on Assertion of Right to Counsel
 
 23
 Cruz argues that during closing and rebuttal arguments the prosecutor suggested that guilt could be inferred from Cruz's assertion of his right to counsel. Cruz contends that the import of the prosecutor's statements in summation was that Cruz, who, when implicated, asserted his Sixth Amendment right to counsel instead of cooperating with the police, was apparently guilty of the crimes for which he was suspected charged, and ultimately tried. Cruz focuses on several statements made by the prosecution, the most suggestive of which is the following:
 
 
 24
 Even though there's no evidence of that, even though the evidence is uncontroverted, they want you to believe that somebody else did the shooting and Billy was sitting there being questioned by the police knowing that someone else had fired that weapon and yet didn't say a word. That he would sit here and just let them charge him with aggravated murder knowing that someone else did the shooting. He would have been so mad, he would have been jumping around that room, ready to tell the police exactly who it was. He would have been so ticked-off and so mad that those guys were framing him. And yet what did he do? He asked for his father or a lawyer. (RT Vol. XXVI, 6/14/95: 129. ER 35)
 
 
 25
 Although Cruz made no objection following any of the prosecutor's statements, we have held that a prosecutor's improper comment on a defendant's hiring of an attorney is an error of constitutional magnitude. Bruno v. Rushen, 721 F.2d 193, 1994 (9th Cir.1983). It follows that we must review under the harmless-beyond-a-reasonable-doubt standard.
 
 
 26
 Cruz's defense at trial was that Conde, Dizon, Siquig, and Tapiceria, all members of the 3E2 gang which Cruz was not, conspired to implicate him as the shooter and that either Conde or Siquig had been the actual shooter. To combat these theories, the prosecutor pointed out to the jury that Cruz's statements and failure to cooperate during the interrogation were inconsistent with the defense's theories at trial The complained of statements, when taken in context, reflect the prosecutor's intent to have the jury question the validity of the defense theories. Here, the prosecution did not argue that the hiring of defense counsel was in some way probative of guilt. A review of the record does not support the contention that the prosecutor attacked Cruz's exercise of his constitutional right to counsel. Even under the harmless-beyond-a-reasonable-doubt standard, reversal is not warranted in the circumstances of this case.
 
 B. Nonconstitutional Error
 1.. Shifting the Burden
 
 27
 During closing argument Cruz objected after the prosecutor made the following statement:
 
 
 28
 Now, I'm going to ask you, ... has the defense been trying to help you in determining where the truth lies, or have they been trying to confuse the issues and muddy the water? (RT Vol. XXVI, 6/14/95: 120-121. ER 31-32)
 
 
 29
 At a side bar, defense counsel argued that the prosecutor's statement shifted the burden of proof by indicating that the defense had an obligation to present the truth. Once again, the trial court immediately gave a curative instruction. Our review of the record does not: support the interpretation that the prosecutor's comment was an attempt to shift the burden of proof. Rather, it was part of a diligent effort to get the jury to focus on the evidence rather than the elaborate conspiracy spin which defense counsel tried to put on the case. Even if the statement could have been misinterpreted in the manner urged by defense counsel, the curative instruction eliminated any chance that such a misinterpretation remained in the minds of the jury. Any error in the comment was clearly harmless.
 
 2. Improper Vouching
 
 30
 Although no objection was raised at trial, Cruz cites a number of comments mace by the prosecutor during closing and rebuttal arguments that he deems impermissible "vouching" of the witnesses' credibility. Among them are the following statements made by the prosecutor:
 
 
 31
 Now why else should you believe Marcos Tapiceria? You should also believe him because he came in here and told you, he plead [sic] guilty, he got six years. But he also told you that he understands that that agreement calls for him to cooperate, and if he lies, if he's not truthful, that plea agreement can be torn up and he could be sentenced to the max. And he understood that and he realized that he needed to come in and be truthful.... Now, do you think he's gonna provide new information and just lie knowing that if he is found out to be a liar he can lose that plea agreement?
 
 
 32
 And as [defense counsel] Mr. Lujan knows, I'm not gonna sentence anybody. I'm not gonna go into court and sentence anyone until they've complied with their plea agreement, and that just doesn't make any sense. The agreement said that they would cooperate, come with court, and testify truthfully. And until they do that, I'm not gonna go into court and say, "Yeah, Judge, we can sentence them...." It's a plea agreement, ladies and gentlemen. They have to do what they've agreed to.
 
 
 33
 And we're supposed to believe that they came in here and lied, and that they were framing Billy? That they violated their oaths as peace officers and went ahead and tried to frame up somebody? Ladies and gentlemen, it is just ridiculous. Police officers do not lie under oath. They don't frame defendants. Those police officers came in here and testified truthfully. They told the truth. You could see and Mr. Lujan could see it. And it's a sign of the desperation of the defense that he's trying to slander those police officers because he knows if you listen to what they say and think about it you're gonna find Billy guilty, and you should find Billy guilty.
 
 
 34
 Because no objections were made, no curative instructions were given at the time of any of the aforementioned statements. However, the jury received the court' § general instruction at the close of all arguments that counsels statements were not evidence.
 
 
 35
 " 'As a general rule, a prosecutor may not express his opinion of the defendant's guilt or his belief in the credibility of government witnesses.' " United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir.1993) (quoting United States v. Molina, 934 F.2d 1440, 1444 (9th Cir.1991)). Because no "bright-line rule" exists to determine when vouching will result in reversal, in Necoechea this court set forth factors to be considered, including:
 
 
 36
 the form of vouching; how much the vouching implies that the prosecutor has extra-record knowledge of or the capacity to monitor the witness's truthfulness; try inference that the court is monitoring the witness's veracity; the degree of personal opinion asserted; the timing of the vouching; the extent to which the witness's credibility was attackei; the specificity and timing of a curative instruction the importance of the witness's testimony and the vouching to the case overall.
 
 
 37
 Necoechea, 986 F.2d at 1278.
 
 
 38
 Cruz complains that the prosecutor's aforementioned statements, at a crucial time at trial vouched for the truthfulness of the witnesses' testimony Cruz asserts that the form of vouching consisted both of extensive direct and indirect comments concerning the truthfulness of key prosecution witnesses. More specifically, presumably in an attempt to show that both the prosecution and the court monitored the witnesses' veracity, Cruz identifies the prosecutor's comments concerning the plea agreements requiring truthful trial testimony and the pretrial statements made by Dizon and Tapiceria during their change of plea hearings as improper and particularly problematic. Additionally, although Cruz concedes that the prosecutor did not specifically affirm personal knowledge of the truthfulness of the witnesses' testimony, he argues that the totality of his remarks indicated to the jury that he possessed additional information not available to the jury.
 
 
 39
 A review of the prosecutor's remarks at closing reveals that there was no suggestion by the prosecutor that evidence not in the record supported the testimony of the witnesses. The plea agreements as well as the pretrial statements made at the change of plea hearing were introduced into evidence before the jury. The defense had taken the position that the plea deals were favorable to the witnesses and part of an elaborate conspiracy to "frame" Cruz. This position was argued forcefully and at length by the defense. The prosecutor did not give personal assurances of the witnesses' veracity nor did he place the prestige of the government behind the witnesses There is no dispute that the government's case relied upon the testimonies of the 3BZ gang members who were present at the shooting and that their credibillty as witnesses was critical to convince the jury to convict Cruz. The record supports the conclusion that the prosecutor's statements relating to witness credibility were supported by reasonable inferences from the evidence and made in the context of argument about the evidence before the jury. The prosecutor merely argued that the witnesses were telling the truth that Cruz was the shooter; an argument the prosecutor had to make in order to controvert the "frame" theory advanced by Cruz.
 
 
 40
 Due to Cruz's failure to object this court reviews the improper vouching claim for plain error. Assuming arguendo that an error exists and tnat the error is plain, Cruz has made no showing that, in the context of the entire trial, the prosecutor's comments affected the jury's ability to judge the evidence fairly nor has he established that his rights or the fairness, integrity or public reputation of the judicial proceedings were substantially affected. Taken in context and with the teaching of Necochea in mind, we find that the prosecutor's comments do not require the reversal of Cruz's conviction to prevent a miscarriage of justice.
 
 3. Attacks on Defense Counsel
 
 41
 Cruz objects to the prosecutor's comments that defense counsel was trying to confuse the jury or shift the focus away from the defendant and onto other details not related to the essential elements of the crime. Cruz argues that the prosecutor repeatedly and intentionally impunged defense counsel's integrity before the jury by stating that he engaged in acts to deliberately confuse them by drawing, attention away from Cruz and by presenting unsupported theories concerning the murder.
 
 
 42
 A personal attack on defense counsel's's integrity can constitute misconduct. United States v. Santiago, 46 F.3d 885, 892 (9th Cir.1995), cert. denied 515 U.S. 1162 (1995). However, we have held that criticism of defense theories and tactics is a proper subject of closing argument. United States v. Sayetsitty, 107 F.3d 1405, 1409 (9th Cir.1997). Our review of the record reveals that the prosecutor's statements did not make direct or personal attacks on the integrity of defense counsel. The comments were directed att the defense tactic of shifting the jury's attention away from Cruz. The comments also tended to emphasize the absence of credible evidence supporting Cruz's conspiracy theory. Presenting a defense that included the assertion that the police and even the prosecutors were involved in a conspiracy to wrongfully convict Cruz necessarily invites a certain amount of comment on the reasonableness of the defense theory which, to the extent it it is persuasive, will show defense counsel in a bad light. After reviewing the record, we find nothing improper in the prosecutor's remarks. Furthermore, the prosecutor's remarks were all subject to the court's instruction that statements and arguments of counsel were not evidence and were not to be considered as such.
 
 C. Cumulative Error
 
 43
 Although errors reviewed separately may fall short of reversible error, "their cumulative effect may nevertheless be so prejudicial as to require reversal. In reviewing for cumulative error, the court must review all errors preserved for appeal and all plain errors. Even if a particular error is cured by an instruction, the court should consider any 'traces' which may remain." United States v. Necoechea, 986 F.2d at 1282 (citations omitted). In Necoechea, all the errors raised were subject to plain error review. Id. at 1283. However, we noted, citing United States. v. Rivera, 900 F.2d 1462, 1470 n. 6 (10th Cir.1990), that when aggregating errors, if any error is constitutional, then the aggregate error should be reviewed under the harmless-beyond-a-reasonable-doubt standard. Necoechea, 986 F.2d 1283.
 
 
 44
 Some of the alleged errors are of constitutional dimension; therefore, the aggregate error must be reviewed under the harmless-beyond-a-reasonable-doubt standard. Cruz asserts that, when viewed together, the prosecutor's improper remarks were extensive, occurred at a critical time in a lengthy trial--summation, and were clearly pre-prejudicial. Further, despite the fact that the court gave two curative instructions during the prosecution's closing argument, Cruz contends that the instructions were insufficient and inadequate to address the effects of all the improper comments made by the prosecution in combination.
 
 
 45
 Viewed in the context of a trial at which over forty witnesses testified, there was strong direct and circumstantial evidence of Cruz's guilt, the defense gave a five-and-a-half hour closing argument which focused on a theory that the authorities had conspired against the defendants and the jury was well instructed; the comments of which Cruz complains[1], even when considered cumulatively, were harmless beyond a reasonable doubt.
 
 
 46
 AFFIRMED.
 
 
 
 **
 The Honorable John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Cruz complains about more passages from the prosecutor's closing remarks than we have quoted in the text of this memorandum, but all have been considered both separately and cumulatively in reaching our decision